## A04A1991. GRAY v. KING et al.
### (608 SE2d 320)

JOHNSON, Presiding Judge.

Hardy King and Beverly King sued Roger Gray to recover principal and interest on a $30,000 loan. Gray denied he was indebted to the Kings, and he counterclaimed for $29,192.97. Following a bench trial, the trial court awarded the Kings $25,500 in principal and $4,229.85 in interest on the loan, and $5,850 in attorney fees, and awarded Gray $8,028 on his counterclaim. Gray appeals, and we affirm except as to the amount of attorney fees awarded. Although the trial court was authorized to award attorney fees, the evidence does not show the fee award was reasonable, and we vacate the judgment as to the amount of attorney fees and remand the case for an evidentiary hearing on that issue.

"The court is the trier of fact in a bench trial, and its findings will

---

be upheld on appeal if there is any evidence to support them."[1] Viewed to uphold the trial court's findings, the evidence shows Hardy King and Gray were partners in a business enterprise consisting of buying, repairing, and then selling used cars. They had an oral agreement to share equally in the profits and losses of the business. In March 1998, Hardy King and his wife Beverly King had a lunch meeting with Gray to discuss the possibility of the Kings investing in another of Gray's business ventures, which involved purchasing computers to be sold to the West Point Military Academy. The Kings declined to invest.

After the lunch meeting, Gray told Hardy King that his cash flow was "a little bit short," and if King would loan him $30,000 he would repay King within 30 days. On June 13, 1998, Hardy King wrote a $30,000 check to Gray from a joint account with his wife. After the 30-day period passed, Hardy King asked Gray about the loan, and Gray represented that his money was tied up because of "technical difficulties" and problems with the computer venture. Gray subsequently repaid only $4,500 of the loan. The Kings brought this action on October 8, 2001, to recover the outstanding principal, along with interest at the legal rate and attorney fees.

1. Gray contends the trial court erred in awarding pre-judgment interest because the Kings had made no written demand for payment and there was no specific date on which the $30,000 was due. "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand."[2] Evidence shows that Gray agreed to repay the loan within 30 days but did not do so. The Kings then demanded Gray repay the outstanding loan balance within 30 days of service of their complaint, which was filed October 8, 2001. The complaint was served on Gray October 9, 2001. The trial court awarded interest on the unpaid loan balance at the legal rate of interest[3] from November 8, 2001, through March 22, 2004, the date of trial. As evidence showed the Kings demanded payment and the debt was payable at or before that time, they were entitled to pre-judgment interest as awarded. "An award of interest under [OCGA § 7-4-15] is not premised on bad faith but on the principle that when a debt is owed and the demand for funds is made, interest accrues from the time entitlement attaches."[4] The trial court did not err in awarding pre-judgment interest.

---

[1] (Footnote omitted.) *Page v. Braddy*, 255 Ga. App. 124, 126 (564 SE2d 538) (2002).

[2] OCGA § 7-4-15.

[3] OCGA § 7-4-2 (a) (1) (A).

[4] (Citation omitted.) *Rivergate Corp. v. Atlanta Indoor Advertising Concepts*, 210 Ga. App. 501, 503 (3) (436 SE2d 697) (1993).

2. (a) Gray contends the trial court erred in awarding attorney fees. Although we vacate the award of attorney fees because the evidence was insufficient to support the amount of the award, the trial court did not err in concluding that the Kings were entitled to recover attorney fees.

OCGA § 13-6-11 provides that litigation expenses are generally not allowed; but "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," litigation expenses may be allowed. "The standard of review of an award of attorney fees under OCGA § 13-6-11 is whether there is any evidence to support the award."[5]

The trial court found that Gray had acted in bad faith and was stubbornly litigious in failing and refusing to repay the loan. "A recovery for stubborn litigiousness . . . is authorized where the evidence reveals no bona fide controversy or dispute with regard to the defendant's liability."[6] The determination of whether there is a bona fide controversy is for the trier of fact.[7]

Gray contends there is evidence that the $30,000 was an investment and not a loan, and therefore there was a bona fide controversy between the parties. However, simply because Gray presented a defense does not mean the trial court was required to find a bona fide controversy.[8] The trial court was entitled to conclude that Gray's contention that the $30,000 was an investment in Gray's venture to sell computers to West Point Military Academy was specious, and that Gray had been stubbornly litigious in refusing to repay the loan. "There being some evidence authorizing the award of attorney fees, this court cannot say as a matter of law that there was a reasonable defense to the main claim."[9] The trial court did not err in finding that the Kings were entitled to attorney fees.

(b) Gray further contends that the evidence was insufficient to support the amount of attorney fees awarded because no testimony

---

[5] (Citation and punctuation omitted.) *Bryan v. Brown Childs Realty Co.*, 252 Ga. App. 502, 507 (3) (556 SE2d 554) (2001).

[6] (Citation and punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (3) (466 SE2d 27) (1995).

[7] See *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 144 (2) (460 SE2d 854) (1995).

[8] See, e.g., *Gist v. Ferguson Constr. Co.*, 197 Ga. App. 625, 627-628 (4) (398 SE2d 862) (1990) (appellant defended his refusal to pay amounts owing under a contract by claiming a setoff for construction defects, but the jury was entitled to conclude he had no reasonable basis for this defense, and we affirmed award of attorney fees based on stubborn litigiousness).

[9] (Citations omitted.) *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 436 (2) (301 SE2d 493) (1983). See also *Ken-Mar Constr. Co. v. Bowen*, 245 Ga. 676, 676-677 (266 SE2d 796) (1980) (judgment for attorney fees should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense).

was offered as to the reasonableness of those fees. We are constrained to agree. "An award of attorney fees is unauthorized if [the Kings] failed to prove the actual costs of the attorney and the reasonableness of those costs."[10] Hardy King testified as to his attorney's hourly rate, the number of hours spent by the attorney on depositions and trial preparation, and the amount of the fees. However, there was no testimony by any witness as to the reasonableness of the fees.[11] "Even though testimony from [their] own attorney on this matter would have sufficed, [the Kings] made no effort to introduce such."[12] We therefore vacate the portion of the judgment awarding the Kings $5,850 in attorney fees and remand for an evidentiary hearing on the amount of attorney fees. Upon remand, following the entry of a new judgment on the attorney fees issue, the parties may pursue any appeal as provided by law.

3. Gray contends the trial court erred in entering a judgment against him personally because the loan was made to M&M Motors,[13] and if Gray promised to pay the Kings any money it was a promise to pay the debt of another, which is unenforceable unless in writing.[14] We disagree because the trial court could conclude Gray was the primary debtor.

In his testimony, Hardy King refers to the loan as if it were made to M&M Motors, to both M&M Motors and Gray, and to Gray, but the trial court could conclude the loan was made to Gray. The check was made to the order of Gray. Although "M&M Motors" was added as a payee on the check, testimony showed that the addition was not made in the handwriting of either Hardy King or Beverly King. Testimony also showed Gray agreed to repay the loan. As there is some evidence to support the trial court's finding that Gray was the principal obligor on the loan, the finding will not be overturned on appeal.[15]

---

[10] (Punctuation and footnote omitted.) *Cannon Air Transport Svcs. v. Stevens Aviation, Inc.*, 249 Ga. App. 514, 519 (6) (548 SE2d 485) (2001).

[11] See *Kwickie/Flash Foods v. Lakeside Petroleum*, 256 Ga. App. 556, 558 (2) (568 SE2d 816) (2002) (appellant established criteria for award of attorney fees under OCGA § 13-6-11 and presented actual evidence of the costs of its attorney, but judgment for attorney fees was vacated because no testimony was offered as to the reasonableness of the fees); *Redwine v. Windham*, 237 Ga. App. 149, 151 (513 SE2d 13) (1999) (trial court was authorized to direct verdict against appellant's claim for attorney fees because no evidence showed that legal expenses claimed were a reasonable value for professional services rendered).

[12] (Footnote omitted.) *Cannon*, supra at 519 (6).

[13] We note that it is unclear whether M&M Motors was a corporation or other legal entity separate from Gray.

[14] See *Lanier v. Anthony*, 261 Ga. App. 848, 852 (1) (583 SE2d 893) (2003) (the Statute of Frauds requires a promise to pay the debt of another to be reduced to writing).

[15] See *Maughan v. Turner Communications Corp.*, 143 Ga. App. 262, 263 (1) (238 SE2d 262) (1977) (where trial judge sits without a jury and makes determinations of fact, his verdict will not be overturned if there is any evidence to support it).

4. Gray claims the trial court erred in awarding him only $8,028 on his counterclaim against Hardy King because $8,028 is not a figure reflected by the evidence. Gray contends that if the trial court found in favor of his counterclaim in any amount, that the award should have been for $25,007.21. This amount represents the sum of $8,615, Hardy King's purported pro rata share of partnership losses, and $16,392.21, the amount Gray claimed for repairs performed on vehicles financed by Bob Richards. We disagree.

Evidence shows that Hardy King and Gray agreed to share equally in the profits and losses of their business enterprise, or partnership, of buying, repairing, and then selling used motor vehicles. King was responsible for selling the vehicles and Gray, through his business M&M Motors, repaired them. Gray provided the funds to buy the vehicles, and Gray would periodically pay Hardy King a pro rata share of the profits. According to Gray's testimony, Gray incurred $17,230 in losses on behalf of the partnership. Gray maintained that Hardy King had not reimbursed him for Hardy King's portion of these partnership losses, which were attributable to vehicles purchased with Gray's money and then sold at a loss.

Subsequently, a third party, Richards of Richards Motors, began providing financing to purchase the used vehicles marketed by Hardy King, and titles to these vehicles were placed in Richards' name until resold. Gray testified that Hardy King owed him $16,392.21 for costs he incurred in repairing vehicles purchased through Richards. However, Hardy King testified that the repairs on the Richards financed vehicles had been paid for in cash, apparently out of proceeds from the sale of the vehicles. This is consistent with the business relationship between Gray and Hardy King, which was often conducted on a cash basis. Accordingly, the trial court could have concluded that Gray was paid for the repairs to the Richards financed vehicles, or that he simply failed to prove this portion of his claim. In any event, the trial court was not required to award Gray $25,007.21 on his counterclaim.

Gray further shows the amount actually awarded by the trial court on his counterclaim, $8,028, is not an amount which appears in evidence. However, in addition to testimony by Gray, the trial court was presented with testimony of Hardy King and Beverly King which touched upon the partnership's operation, as well as exhibits providing lists of expenses purportedly incurred by Gray. Even if the trial court generally accepted Gray's testimony as to the partnership losses showing Hardy King's unpaid share to be $8,615, the trial court was authorized to conclude Hardy King's share of those losses to be a few hundred dollars less than the amount that Gray claimed. "The evidence was sufficient to calculate the amount of damages and, the amount awarded was within the range of the evidence adduced. We

find no error."[16]

*Judgment affirmed in part and vacated in part and case remanded with direction. Smith, C. J., and Phipps, J., concur.*

DECIDED DECEMBER 10, 2004.

*Robert W. Hunter III,* for appellant.
*Mark A. Cleary,* for appellees.

---

[16] (Citations omitted.) *Canal Ins. Co. v. Savannah Bank &c. Co.,* 181 Ga. App. 520, 522 (3) (352 SE2d 835) (1987).