A08A0512, A08A0513. PAZUR v. BELCHER; and vice versa.
(659 SE2d 804)

BLACKBURN, Presiding Judge.

After obtaining a default judgment against Med-Quip, Inc., Theodore Pazur filed a separate lawsuit against the company's sole shareholder, Vicki Belcher, seeking to hold her liable for that judgment by piercing the corporate veil. In Case No. A08A0512, Pazur appeals the denial of his motion for summary judgment, arguing that the trial court erred in finding that Belcher's alleged participation in Med-Quip's tortious conduct by itself was insufficient to support a piercing of the corporate veil as a matter of law. In Case No. A08A0513, Belcher appeals the denial of her motion for summary judgment,

arguing that the trial court erred in finding (i) that questions of fact remained as to whether she abused the corporate form and (ii) that she was bound by Med-Quip's admissions of conversion in the earlier default judgment against it. Belcher further argues that the trial court's ruling violated public policy. Because these two appeals involve the same set of facts and principles of law, we consolidate them for review. For the reasons set forth below, we affirm the trial court's denial of Pazur's motion for summary judgment but reverse its denial of Belcher's motion for summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo.*[2]

So construed, the evidence shows that from 1991 to 1994, Pazur worked as a salesman for Med-Quip, which was in the business of selling medical supplies and equipment. Prior to 1992, Vicki Belcher's husband (David) was the president and CEO and owned all of the shares of Med-Quip. In August 1992, Belcher's husband died, and Belcher became the CEO and sole shareholder. During that time, Belcher was responsible for the day-to-day operations of the company, including approving and writing the commission checks for Pazur and the other salespeople.

In February 1994, Pazur resigned from Med-Quip due to a dispute regarding the method by which his commissions were calculated. Specifically, Pazur disagreed with Med-Quip's practice of making deductions from the commissions account whenever a customer failed to pay for equipment that the customer had purchased and received. On May 16, 1996, Pazur sued Med-Quip in the State Court of Fulton County for breach of contract and conversion, alleging that the company had wrongfully failed to pay him the commissions he had earned as an employee. Approximately one year later, while Pazur's lawsuit against Med-Quip was pending, Belcher sold Med-Quip to another company in an arm's length stock-for-stock transaction. Following the sale, Belcher resigned her position as president of Med-Quip and relinquished all interest in the company.

On November 18, 2002, the Fulton County trial judge presiding over Pazur's lawsuit against Med-Quip entered a default judgment against the company. Shortly thereafter, Pazur sought to add Belcher

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).
[2] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

as a defendant to that action. The court initially allowed Belcher to be added but, pursuant to a motion filed by Belcher, eventually dismissed her from the case on the grounds that the relevant statutes of limitation barred Pazur's breach of contract and conversion claims against her personally. On appeal, we affirmed the Fulton County trial court's ruling. *Pazur v. Belcher*.[3]

On June 26, 2003, while Pazur's appeal of Belcher's dismissal was pending, the damages for his default judgment against Med-Quip were adjudicated in the amount of $73,430. In June 2005, Pazur filed the present action in the State Court of Cobb County, seeking to pierce the corporate veil and thereby hold Belcher liable for the judgment against Med-Quip. At the conclusion of discovery, both parties filed motions for summary judgment, which were denied. The trial court granted certificates of immediate review to both parties, and these interlocutory appeals followed.

## Case No. A08A0512

1. In his sole enumeration of error, Pazur contends that the trial court erred in denying his motion for summary judgment, arguing that Belcher's participation in Med-Quip's actions that were deemed conversion in the earlier default judgment granted against the company constituted, by itself, a sufficient basis for piercing the corporate veil and holding Belcher liable as the alter ego of Med-Quip as a matter of law. We disagree.

The fundamental flaw in Pazur's approach is a failure to distinguish an officer's personal liability for torts he personally participated in, from an officer's personal liability for corporate debts due to a piercing of the corporate veil. The former type of liability rests on the notion that an individual is responsible for his own tortious acts. See *Cherry v. Ward*.[4] Thus, the focus in this type of liability is whether the individual personally participated in a tort. The latter type of liability rests on the notion that a corporate officer, or owner, who has abused the corporate form by commingling personal and corporate assets, should be held liable for corporate debts and liabilities. See *Baillie Lumber Co. v. Thompson*.[5] Thus, the focus in this type of liability is the abuse of the corporate form, *not* the personal participation of the officer in the tortious conduct at issue.

This latter form of liability is associated with the "legal principle that each corporation is a separate entity, distinct and apart from its

[3] *Pazur v. Belcher*, 272 Ga. App. 456 (612 SE2d 481) (2004).
[4] *Cherry v. Ward*, 204 Ga. App. 833, 834 (1) (a) (420 SE2d 763) (1992).
[5] *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289-290 (1) (612 SE2d 296) (2005).

stockholders, and insulation from liability is an inherent purpose of incorporation." (Citation omitted.) *Clark v. Cauthen.*[6] "[G]reat caution should be exercised before disregarding this separateness." *Garrett v. Women's Health Care of Gwinnett.*[7] "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." *Baillie Lumber Co.*, supra, 279 Ga. at 290 (1). See *Clark*, supra, 239 Ga. App. at 227 (2).

> To prevail based upon this theory it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist.

(Punctuation omitted.) *Baillie Lumber Co.*, supra, 279 Ga. at 289-290 (1). Personal participation in the tort is irrelevant.

Nevertheless, in this matter, Pazur does not argue that he has pierced Med-Quip's corporate veil as a matter of law by undisputedly showing that Belcher disregarded the corporate entity and made the company her alter ego. Rather, Pazur mistakenly contends that summary judgment was warranted because Belcher admitted to being responsible for making deductions from the commissions account and thus participated in actions that were deemed conversion in the earlier default judgment against Med-Quip. This argument misses the mark.

"[A] corporate officer who takes part in the commission of a tort committed by the corporation is personally liable therefor." *Almond v. McCranie.*[8] See *Cherry*, supra, 204 Ga. App. at 834 (1) (a). But, as stated, holding a corporate officer or owner personally liable for her own tortious conduct is a distinct and separate claim from piercing the corporate veil. It is only "[w]here the evidence is insufficient to pierce the corporate veil [that] the liability of the corporate officers for a tort committed by the corporation is dependent upon separate evidence of direct participation in the tort." (Punctuation omitted.) *Beasley v. A Better Gas Co.*[9] See *Smith v. Hawks.*[10] Thus, while any

---

[6] *Clark v. Cauthen*, 239 Ga. App. 226, 227 (2) (520 SE2d 477) (1999).

[7] *Garrett v. Women's Health Care of Gwinnett*, 243 Ga. App. 53, 55-56 (2) (532 SE2d 164) (2000).

[8] *Almond v. McCranie*, 283 Ga. App. 887, 889 (2) (643 SE2d 535) (2007).

[9] *Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 429 (2) (604 SE2d 202) (2004).

[10] *Smith v. Hawks*, 182 Ga. App. 379, 385 (4) (355 SE2d 669) (1987).

evidence that Belcher committed conversion as a corporate officer of Med-Quip would support holding her personally liable for that tort, such evidence would not support a separate claim to pierce Med-Quip's corporate veil. See *Cherry*, supra, 204 Ga. App. at 834 (1) (a); *Smith*, supra, 182 Ga. App. at 385 (4).

Here, this distinction is important as Pazur is barred by the statute of limitation from bringing a conversion claim against Belcher personally. See *Pazur*, supra, 272 Ga. App. at 459 (2). He therefore cannot hold Belcher personally liable on summary judgment for Med-Quip's conversion without providing undisputed evidence that Belcher disregarded Med-Quip's corporate entity. However, Pazur provides no such evidence. Furthermore, and contrary to Pazur's contentions, Belcher's testimony that she was responsible for making deductions from the commissions account does not constitute an admission to conversion by her despite the fact that those deductions were deemed conversion on the part of Med-Quip in the earlier default judgment. "[T]reating the admissions of [Med-Quip] as binding on [Belcher] personally would undermine the longstanding principle that officers and shareholders are not personally liable for corporate acts . . . until such time as the corporate veil has been successfully pierced." *Milk v. Total Pay & HR Solutions*.[11] Thus, even if Pazur could bring a conversion action against Belcher personally, his default judgment against Med-Quip would not allow him to bypass his burden of having to prove that Belcher personally engaged in conversion. Accordingly, because Pazur has failed to provide undisputed evidence that Med-Quip was merely Belcher's alter ego, he cannot obtain summary judgment holding Belcher personally liable for the conversion ruled to have been committed by Med-Quip in the earlier default judgment. The trial court did not err in denying Pazur's motion for summary judgment.

### Case No. A08A0513

2. Belcher contends that the trial court erred in denying her motion for summary judgment, arguing that there is no genuine issue of material fact to support Pazur's allegation that the corporate veil has been pierced. We agree. As stated in Division 1, supra, to pierce the corporate veil

> it is necessary to show that the shareholders disregarded the corporate entity and made it a mere instrumentality for the transaction of their own affairs; that there is such unity of

---

[11] *Milk v. Total Pay & HR Solutions*, 280 Ga. App. 449, 452-453 (634 SE2d 208) (2006).

interest and ownership that the separate personalities of the corporation and the owners no longer exist.

(Punctuation omitted.) We agree. As stated in Division 1, supra, to pierce the corporate veil *Baillie Lumber Co.*, supra, 279 Ga. at 289-290 (1). "Sole ownership of a corporation by one person or another corporation is not a factor, and neither is the fact that the sole owner uses and controls it to promote his ends. There must be evidence of abuse of the corporate form." (Punctuation omitted.) *Clark*, supra, 239 Ga. App. at 227 (2). Evidence of such abuse can be shown by a "commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." (Punctuation omitted.) Id. See *J-Mart Jewelry Outlets v. Standard Design.*[12]

Pazur argues that the trial court's order denying Belcher's motion for summary judgment correctly found that several statements made by Belcher during her deposition created questions of fact as to whether she abused the corporate form as Med-Quip's sole shareholder. However, a review of this alleged evidence belies Pazur's argument. For instance, Pazur argues that Belcher's testimony that in 1992 Med-Quip loaned approximately $3,162 to her and her husband created a question of fact. This loan was properly noted in Med-Quip's financial statement for that year. Thus, "the existence of [this] clearly identified loan[ ] was not in and of itself sufficient to evidence a disregard by [Belcher] of the corporation's separate identity." *Stewart Bros., Inc. v. Allen*[13] (no abuse of corporate form found where sole shareholder borrowed money from corporate checking account and identified such as loans in corporate checkbook).

Pazur also argues that Belcher's testimony that she loaned Med-Quip $250,000 from a trust account left by her deceased husband, and then later forgave that debt to facilitate Med-Quip's sale to another company, was evidence that Belcher disregarded the corporate form to her benefit. To the contrary, loans between a corporation and its owner, without evidence of actual abuse of the corporate form, do not support piercing the corporate veil. See *Garrett*, supra, 243 Ga. App. at 56 (2) (evidence that owner of corporation loaned the corporation money by itself did not constitute evidence that corporate form was abused); *Clark*, supra, 239 Ga. App. at 228 (2) (fact that owner of corporation forgave royalty payments, which the corporation owed him, was not evidence that owner disregarded corporate entity). Moreover, the fact that Belcher ultimately benefitted by forgiving

---

[12] *J-Mart Jewelry Outlets v. Standard Design*, 218 Ga. App. 459, 460 (1) (462 SE2d 406) (1995).

[13] *Stewart Bros., Inc. v. Allen*, 189 Ga. App. 816, 817 (1) (377 SE2d 724) (1989).

this loan does not change the analysis. Indeed, any action taken on behalf of a closely-held corporation by an officer-shareholder which results in a benefit to the corporation necessarily benefits the officer-shareholder. *Caton v. Haynes*.[14] As noted, such use of the corporation to benefit the officer-shareholder's own ends does not constitute abuse of the corporate form. See *Clark*, supra, 239 Ga. App. at 227 (2). Similarly, Pazur alleges that his accounting expert's testimony that Belcher's practice of deducting bad debt from the commissions account was misleading created a question of fact as to whether the corporate form was disregarded. However, this testimony also only provided evidence that Belcher took actions that benefitted Med-Quip and ultimately herself and thus did not support a piercing of the corporate veil. See id.

Finally, Pazur contends that Belcher's testimony that she had a company credit card, but could not recall whether the card was in her or Med-Quip's name, and her testimony that Med-Quip provided her with a company car, which was recorded as part of her compensation on her W-2 form, constituted evidence of her abusing Med-Quip's corporate form. But Pazur has failed to provide any evidence showing that either the credit card or the company car was not a legitimate business expense or was not authorized as part of Belcher's compensation; therefore, Pazur has not demonstrated that this evidence supports a piercing of Med-Quip's corporate veil. See *Fuda v. Kroen*.[15]

Accordingly, as no evidence was adduced that Belcher abused the corporate form by disregarding the separateness of the corporation through commingling or confusing its assets, records, or control with her own, we hold that the trial court erred in denying Belcher's motion for summary judgment.

3. In light of our decision in Divisions 1 and 2, supra, we need not address Belcher's remaining enumerations of error.

*Judgment affirmed in Case No. A08A0512. Judgment reversed in Case No. A08A0513. Miller and Ellington, JJ., concur.*

DECIDED MARCH 21, 2008 —
RECONSIDERATION DENIED APRIL 2, 2008.

*Foltz & Martin, Kevin H. Hudson, Jonathan E. Hawkins*, for appellant.

*Brock, Clay, Calhoun & Rogers, Eric A. Brewton*, for appellee.

---

[14] *Caton v. Haynes*, 260 Ga. 204, 205 (391 SE2d 107) (1990).
[15] *Fuda v. Kroen*, 204 Ga. App. 836, 838 (1) (420 SE2d 767) (1992).