**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 27, 2013**

# In the Court of Appeals of Georgia

A12A2326. MECCA CONSTRUCTION, INC. et al. v. MAESTRO INVESTMENTS, LLC, et al.

PHIPPS, Presiding Judge.

Maestro Investments, LLC and Michael Foster (collectively "Maestro") filed suit against Mecca Construction, Inc., Opportunity Investments/Developers, LLC, Khatra Mohamed, and Mikal Abdullah (collectively "Mecca"), alleging claims for, among other things, breach of contract and fraud. The trial court found that Mecca failed to timely answer the complaint and, after a trial on the issue of damages, entered a judgment of default and an award of damages and attorney fees against Mecca.

Mecca appeals, contending that: (1) the trial court erred in denying its motion to extend the time to answer the complaint and in finding that it (Mecca) was in default; (2) the trial court erred in declining to open the default; (3) the trial court

erred in not allowing it (Mecca) to contest the factual allegations of the complaint, which, Mecca asserts, were not well-pled; (4) the trial court erred in granting judgment in favor of Foster when there was no evidence that Foster was a party to any contract or a participant in any transaction with Mecca; (5) there was no "well pled or proven" basis to hold Mohamed and Abdullah (officers of Opportunity Investments and Mecca Construction, respectively) personally liable; (6) a settlement agreement was unenforceable because there was no evidence the parties had reached an agreement; and (7) there was no evidentiary basis to award attorney fees. For the reasons that follow, we affirm.

"Since this appeal involves questions of law concerning the nature of damages in [Maestro]'s complaint and the trial court's entry of default judgment for liquidated damages, this Court must review the record de novo and apply a plain legal error standard of review."[1] "When a question of law is at issue, . . . we owe no deference to the trial court's ruling and apply the plain legal error standard of review."[2]

---

[1] *GMC Group. v. Harsco Corp.*, 304 Ga. App. 182 (695 SE2d 702) (2010) (citation and punctuation omitted).

[2] *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000) (citation and punctuation omitted).

1. Mecca contends that the trial court erred in denying its motion for an extension of time to answer the complaint and in finding that it was in default. Mecca asserts that the trial court's determination of when its answer was due was erroneous, and that instead of making a determination of when the answer was due, the trial court should have ruled that the time for filing the answer would not begin until there was a "clear record of service as required by OCGA § 9-11-4 (h)."

(a) Mecca contends that the trial court erred in denying its motion for an extension of time to answer the complaint. We disagree.

The record shows that Maestro filed suit against Mecca on April 5, 2011. In April and May 2011, service of the suit was attempted but was unsuccessful. On June 16, 2011, Maestro sent to Mecca, pursuant to OCGA § 9-11-4, four documents (one for each defendant) entitled "Notice of Lawsuit and Request for Waiver of Service of Summons" (hereinafter, "the notices"). On July 13, 2011, four documents (each executed by the defendants) entitled "Waiver of Service of Summons" (hereinafter, "the waivers") were filed with the clerk of court. On August 25, 2011, Mecca Construction and Opportunity Investments, vowing to retain counsel to defend against the lawsuit, moved for an extension of time to answer the complaint. On September 15, 2011, Mecca, acting pro se, filed an answer to the complaint. On

3

October 4, 2011, the trial court entered an order denying the request for an extension of time to answer the complaint.

Mecca asserts that: (1) in the October 2011 order, the trial court erroneously determined that Mecca's answer to the complaint was due 30 days from the date on which the waivers were filed; and (2) the notices that were sent to Mecca correctly provided that Mecca's answer was due 60 days from when Maestro sent the notices to Mecca.

Under OCGA § 9-11-4 (d) (3), to avoid costs, a plaintiff may notify a defendant of the commencement of the action and request that the defendant waive service of a summons. And OCGA § 9-11-4 (d) (3) (F) pertinently provides that the notice and request shall "[a]llow the defendant a reasonable time to return the waiver, which shall be at least 30 days from the date on which the request is sent." OCGA § 9-11-4 (d) (5) pertinently provides: "A defendant that, before being served with process, returns a waiver so requested in a timely manner is not required to *serve an answer* to the complaint until 60 days after the date on which the request for waiver of service was sent. . . ."[3] Here, Mecca timely returned the waivers. Thus, Mecca's answer was due within 60 days of June 16, 2011 (when the notices were sent), and not within 30

---

[3] (Emphasis supplied).

days of July 13, 2011 (when the waivers were filed), as the trial court had ruled.[4]

Notwithstanding, as Mecca filed its answer on September 15, 2011, it was outside either period of time for filing, which was August 15, 2011 or August 12, 2011, respectively.

OCGA § 9-11-6 (b) (2) pertinently provides: "When by this chapter or by a notice given thereunder . . . an act is required . . . the court for cause shown may at any time in its discretion . . . upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect."[5] The motion for an extension was made after the time for filing an answer had expired.[6] "It was therefore incumbent upon [Mecca Construction and Opportunity

---

[4] Compare *Satnam Waheguru Corp. v. Buckhead Community Bank*, 304 Ga. App. 438, 440-441 (696 SE2d 430) (2010) (where counsel executed an acknowledgment and waiver pursuant to OCGA § 9-10-73, answer was due within 30 days after the acknowledgment and waiver); *SRM Realty Svcs. Group v. Capital Flooring Enterprises*, 274 Ga. App. 595, 601 (1) (617 SE2d 581) (2005) (because the time period to serve an answer is not extended by OCGA § 9-10-73, where service is acknowledged pursuant to that statute, an answer must be served within 30 days after service is acknowledged).

[5] See *Barone v. McRae & Holloway*, 179 Ga. App. 812, 813 (1) (348 SE2d 320) (1986).

[6] See id. at 812-813 (1).

5

Investments] to show excusable neglect."[7] "'Excusable neglect' means, among other things, 'a reasonable excuse.' The maxim that 'ignorance of the law offers no legal excuse' needs no citation."[8]

Despite a prior vow by Mecca Construction and Opportunity Investments to retain counsel to answer the complaint, these two defendants along with Mohamed and Abdullah, filed a joint, pro se answer to the complaint. On appeal, Mecca argues that it "f[ou]nd the provisions confusing" as to when its answer was due. But ignorance of the law offers no legal excuse.[9] The law is plain,[10] and "[w]e cannot say [Mecca]'s explanation constituted excusable neglect as a matter of law. . . . Nor can we say that the trial court abused its discretion[11] in refusing to grant, for the reason

---

[7] Id. at 813 (1) (citation omitted).

[8] Id. 813-814 (1) (citation and punctuation omitted); see *Ga. State Licensing Bd. &c. v. Allen*, 286 Ga. 811, 817 (2) (692 SE2d 343) (2010); OCGA § 1-3-6 ("After they take effect, the laws of this state are obligatory upon all the inhabitants thereof. Ignorance of the law excuses no one.").

[9] Id. at 814 (1); *Ga. State Licensing Bd. &c.*, supra; OCGA § 1-3-6.

[10] See OCGA § 9-11-4 (d) (5) (providing time for service of answer when waiver of service of summons is executed).

[11] See OCGA § 9-11-6 (b) (pertinently providing: "[T]he court for cause shown may at any time in its *discretion* . . . upon motion made after the expiration of the specified period, permit [an] act to be done where the failure to act was the result of excusable neglect. . . .") (emphasis supplied).

6

advanced, a judicial extension of the statutory time for filing the answer, in essence allowing a circumvention of the default status of the action."[12]

Mecca asserts that "the lack of a requirement of filing *something* to make a record of the date on which the time for an answer can be calculated violates due process."[13] But Mecca fails to establish how, on the facts of this case, its due process rights were violated.

Prior to the trial court's determination of when an answer was due, Maestro had filed a pleading opposing Mecca's request for an extension; Maestro attached as exhibits to the pleading copies of the notices it had sent to Mecca. The notices provided that they were "being sent to [Mecca] on behalf of [Maestro] on this 16th day of June, 2011." Accordingly, *something was* filed from which the trial court could have properly calculated when Mecca's answer was due.[14]

---

[12] *Barone*, supra at 813-814 (1).

[13] See *King v. State*, 272 Ga. 788, 792 (1) (535 SE2d 492) (2000) (procedural due process means notice and an opportunity to be heard); *King v. Pioneer Regional Ed. &c.*, 301 Ga. App. 547, 553 (1) (a) (688 SE2d 7) (2009) ("The substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them.") (citations and punctuation omitted).

[14] See OCGA § 9-11-4 (d) (5).

Mecca does not assert that it did not receive the notices, or that the form of the notices was improper. In fact, Mecca conceded in its appellate brief that the notices complied with the pertinent statutory requirements; and the record showed that Mecca executed waivers. Mecca argues, rather, that because the notices were not filed with the clerk of court as "separate document[s]" (but rather as exhibits to a pleading), and did not contain certificates of service, the notices (exhibits) were insufficient for the court to determine when Mecca's answer was due.

In this regard, Mecca's reliance on OCGA § 9-11-4 (h) is misplaced, as that statutory provision pertinently provides: "Failure to make proof of service shall not affect the validity of the service." Indeed, "[w]hen the plaintiff files a waiver of service with the court, . . . no proof of service shall be required."[15] And Mecca points to no authority supporting its position that in order for the trial court to determine when Mecca's answer was due, due process required that Maestro file as *separate documents and/or with certificates of service*, the notices it had sent Mecca.

In any event, Maestro subsequently filed an affidavit executed by its counsel, attesting that he had signed and mailed on June 16, 2011 to each defendant a notice.

---

[15] OCGA § 9-11-4 (d) (6).

8

The alleged defects were cured by the filing of the affidavit.[16] Accordingly, the trial court did not err in denying the motion for an extension of time to answer the complaint.

(b) Mecca contends that the trial court erred in finding that it was in default. "As this enumerat[ed] [error] is not supported by either argument or citation of authority, it is abandoned under Court of Appeals Rule 2[5] (c) (2)."[17]

2. Mecca contends that the trial court erred in declining to open the default judgment. "[T]he trial court has broad discretion in deciding whether or not to open the default, and its decision not to open a default will not be interfered with unless

---

[16] See generally *Montgomery v. USS Agri-Chemical Division*, 155 Ga. App. 189, 191 (2) (270 SE2d 362) (1980) ("if . . . the fact of service appears, and the officer's return is irregular or incomplete, it should not be treated as no evidence, but rather as furnishing defective proof of the fact of service. The irregularity may be cured by an amendment which does not make or state a new fact, but merely supplies an omission in the statement as to an existing fact. . . . If there has been service and a voidable or defective return, it may be amended even after judgment, so as to save that which has been done under service valid in fact but incompletely reported to the court. For . . . it is the fact of the service, rather than the proof thereon by the return, which is of vital importance.").

[17] *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 856 (1) (b) (459 SE2d 592) (1995) (citation omitted); see Court of Appeals Rule 25 (c) (2).

that discretion is manifestly abused."[18] We find no abuse of discretion by the trial court.

On October 3, 2011, Maestro filed a motion to strike Mecca's answer and to enter a default judgment, "as to all issues of liability with the issue of damages to be heard by the Court at a later date." In an order filed on October 11, 2011, the trial court, in response to Maestro's motion, cited OCGA § 9-11-55, recognizing that Mecca had automatically defaulted after it failed to timely file an answer.[19] The court recognized that the statute also provided that after the period of time for opening a default had passed and the case was still in default, "the plaintiff at any time thereafter shall be entitled to verdict and judgment by default . . . unless the action . . . involves unliquidated damages," as this case did. The court therefore issued an order denying Maestro's motion for entry of a default judgment. On October 3, 2011,

---

[18] *Sierra-Corral Homes, LLC v. Pourreza*, 308 Ga. App. 543, 544 (1) (708 SE2d 17) (2011) (punctuation and footnote omitted); see *Cheeks v. Barnes*, 241 Ga. 22, 23 (243 SE2d 242) (1978).

[19] See *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 248 (666 SE2d 699) (2008) (when no answer is filed within the statutory period and the time for responding has not been extended, the case is automatically in default); OCGA § 9-11-55 (a).

Maestro also filed a certificate of default, asserting that Mecca had failed to timely file an answer to the complaint.

On February 17, 2012, Mecca filed a "Motion to Reconsider this Court's Order Filed on October 4, 2011, Denying the Extension of Time to Answer, or in the Alternative to Open Defendant's Default." On February 29, 2012, the trial court, finding that Mecca failed to show excusable neglect or to pay costs to open the default, denied Mecca's motion for reconsideration or alternatively to open the default.

OCGA § 9-11-55 (b) provides:

Opening default. At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

Thus, OCGA § 9-11-55 (b) establishes three legal grounds for opening a default: providential cause, excusable neglect, and where the judge from all the facts

11

determines that a proper case has been made.[20] "Generally, whether the trial court opens a default is a matter resting within its sound discretion, but for the relief to be granted, subsection (b) requires that there be a motion, a meritorious defense, a legal excuse for late filing, and payment of costs."[21]

First, Mecca filed a motion to open the default more than four months after Maestro moved for the entry of a default judgment and filed a default certificate which stated that Mecca had failed to answer the complaint.[22] Second, the late-filed answer is "little more than a general denial and does not present what could

---

[20] See *Barone*, supra at 814 (2); see also *BellSouth Telecommunications*, supra.

[21] *Barone*, supra (citation omitted).

[22] See id. at 812, 814 (2) (defendant first filed a written motion to open the default ten days after plaintiff's motion for default judgment was heard); *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 145 (2) (661 SE2d 185) (2008) (a factor for determining whether opening a default would be appropriate in a particular case includes whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed; any additional delay occasioned by a failure to file promptly for opening default upon its discovery can be considered in determining whether a defendant's neglect was excusable; here, attorneys who undertook to act for the defendant failed to move to open the default judgment until three months after filing an untimely answer, which was five months after the initial service of the lawsuit, and the trial court found that the defendant failed to provide a reasonable excuse for these delays).

reasonably be characterized as a meritorious defense."[23] Third, Mecca "did not present to the court a legal excuse for late filing. [It] relie[d] upon the 'excusable neglect' ground,"[24] which it asserted was that "it could not be ascertained from the record when the Notice of Lawsuit and Request for Waiver of Service of Summons was sent," and thus when the answer was due.

But as we discussed in Division 1 (a),[25] when Mecca's answer was due was ascertainable from the record; and ignorance of the law offers no legal excuse. "Therefore, some of the several conditions precedent to opening the default were not met, and the threshold for exercising discretion need not have been crossed. . . . Upon review of the circumstances, we cannot conclude as a matter of law the court's denial of the request to open the default was a manifest abuse of discretion."[26]

3. Mecca contends that the trial court erred in not allowing it to contest factual allegations of the complaint, which, Mecca asserts, were not well-pled. Although Mecca is correct that "[a]fter a defendant defaults, we treat as true only the well-pled

---

[23] *Barone*, supra at 814 (2) (citations omitted).

[24] Id.

[25] Supra.

[26] *Barone*, supra at 814-815 (2) (citations omitted).

factual allegations[,] [and] forced inferences and conclusions of law cannot demonstrate a claim,"[27] we do not agree that the factual allegations with which Mecca takes issue were not well-pled.

(a) Mecca claims that as it concerns the "contract allegations" of the complaint, "conflicting information" between certain facts alleged in the complaint and certain facts provided in an exhibit attached to the complaint show that the complaint was not well-pled.

Specifically, Mecca asserts that although a written agreement attached to the complaint provided that Maestro would tender to Mecca a particular sum of money, the complaint itself alleged that Mecca tendered a sum different than that mentioned in the agreement; and that although the complaint alleged that the agreement memorialized arrangements between the parties, the agreement "did not say anything about" Maestro tendering the sum of money that it ultimately disbursed to Mecca, as

---

[27] *EnduraCare Therapy Mgmt. v. Drake*, 298 Ga. App. 809, 814 (1) (681 SE2d 168) (2009) (footnote omitted); *Bridges v. Wooten*, 305 Ga. App. 682, 683 (700 SE2d 678) (2010); *Servicemaster Co. v. Martin*, 252 Ga. App. 751, 752 (1) (556 SE2d 517) (2001) (while a default may operate as an admission by the defendant of the well-pled factual allegations in the plaintiff's complaint, it does not admit allegations not well pled, forced inferences, or conclusions of law).

14

alleged in the complaint. Mecca argues that conflicts of these types in the complaint led to "'forced inferences' that cannot result in a default."

Maestro incorporated by reference the agreement into the complaint.[28] Mecca overlooks a memorandum that was attached to the agreement and also filed with the complaint. The memorandum reflected the parties' modified agreement allowing Maestro to submit to Mecca the sum alleged in the complaint. Accordingly, we see no merit in Mecca's claim that the allegations of the complaint dealing with the breach of contract count were not well-pled.

(b) Mecca claims that the allegations of fraud in the complaint were not well-pled and did not meet the requirements of OCGA § 9-11-9 (b). Again, we disagree.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff."[29] "When alleging fraud, the

---

[28] See OCGA § 9-11-10 (c), which pertinently provides: "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." See also *Lord v. Lowe*, 318 Ga. App. 222, 223 (_ SE2d _) (2012) (a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes, and thus, in ruling on a motion to dismiss, a trial court is authorized to consider exhibits attached to and incorporated into the complaint).

[29] *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989) (citation omitted).

15

circumstances constituting fraud must be stated with particularity."[30] A default does not "preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover. And a defendant is entitled to demonstrate that all the facts as admitted by default fail to state a claim upon which relief may be granted. . . ."[31]

Maestro alleged that Mecca had made a false promise to loan Maestro $5 million after Maestro wired $150,000 to Mecca as a "service fee" for the loan; that in reality, Mecca never intended to deliver the loan proceeds; that in order to fraudulently induce Maestro into believing that Mecca had secured a line of credit for $5 million to fund the loan, Mecca presented Maestro with several documents purporting to show same; that a written agreement between Maestro and Mecca provided that in the event Maestro did not receive the loan proceeds within a specified period of time after submitting the "service fee," Maestro would be

---

[30] *Holder v. Brock*, 129 Ga. App. 732 (2) (200 SE2d 912) (1973) (citations omitted) (overruled on other grounds by *Tucker v. Chung Studio of Karate*, 142 Ga. App. 818, 820 (3) (237 SE2d 223) (1977)); OCGA § 9-11-9 (b).

[31] *Freese II, Inc. v. Mitchell*, _ Ga. App. _ (2) (734 SE2d 491) (2012) (citations omitted); *Servicemaster Co.*, supra at 752-753 (1) (a default does not preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover).

16

refunded the "service fee" it submitted to Mecca; that in reliance on Mecca's representations to Maestro, including the written agreement of the parties, Maestro submitted the service fee to Mecca; that after submitting the service fee, Maestro learned that Mecca misappropriated the service fee and invested the funds into a "pooled investment vehicle" or "security," which Mecca was not legally registered to do; that at the time the agreement was executed, Maestro was not aware that Mecca had not in fact secured a line of credit; that in response to Maestro's demands after the payment of the "service fee," Mecca told Maestro that the "investments" were guaranteed and that Maestro would get back its "principal investment" plus interest; and that Mecca failed to return the service fee to Maestro.

"A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud."[32] Here, Maestro's allegations were sufficient to show that Mecca made a promise and did not intend to perform pursuant to the promise.

> While fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the

---

[32] *Howard v. Hammond*, 216 Ga. App. 703, 706 (1) (455 SE2d 390) (1995) (citations and punctuation omitted).

17

future event will not take place. [I]t has been said that allegations of fraud should at the very least designate the occasions on which affirmative misstatements were made and by whom and in what way they were acted upon, [and] we conclude that the allegations in this [complaint] taken as a whole are sufficient to [allege a cause of action for fraud].[33]

4. Mecca contends that the trial court erred in awarding damages to Foster when there was no evidence that Foster was a party to any contract or a participant in any transaction with Mecca. "The default[,] [however,] concludes [Mecca]'s

---

[33] *Hayes v. Hallmark Apts.*, 232 Ga. 307, 308-309 (1) (207 SE2d 197) (1974) (citations and punctuation omitted); *Howard*, supra (where evidence showed that at the time of signing an agreement, defendant had no intention of abiding by terms of agreement, cause of action for fraud was supported); *State Farm Mut. &c. v. Health Horizons, Inc.*, 264 Ga. App. 443, 447-448 (2) (590 SE2d 798) (2003) (complaint sufficiently stated fraud claim where plaintiff contended that it relied on insurance carrier's promise to pay proper medical claims, which it never intended to do and in fact did not do, to the plaintiff's detriment); compare *Servicemaster Co.*, supra at 756-757 (2) (b) (where plaintiff did not specify which facts would support a finding that defendant owed plaintiff any duty independent of those created by a written contract, and complaint did not allege any false statements or concealment inducing plaintiff to provide ongoing or future services, complaint failed to allege a claim for fraud); *Holder*, supra (part of the complaint which alleged claim for damages for fraud was insufficient as a matter of law where allegation of fraud was limited to legal conclusion that plaintiffs were induced to enter into a contract through fraud).

liability and estops [Mecca] from offering any defenses which would defeat the right of recovery."[34] Accordingly, this claim is foreclosed.

In any event, at the trial on the issue of damages, Foster testified that he and Maestro Investments had an agreement: in exchange for submitting to Mecca $100,000, Foster would receive 50 percent of the profits from the business enterprise Maestro allegedly sought. Foster testified that he transferred the money to Mecca, and documentation showing same was admitted in evidence. Thus, Foster showed he was entitled to damages.

5. Mecca contends that there was no proven or well-pled basis to hold Mohamed and Abdullah, officers of Opportunity Investments and Mecca Construction, respectively, personally liable for the award of damages. Mecca argues that Maestro "did not allege in [its] Complaint a 'veil piercing' basis of liability and neither Khatra Mohamed nor Mikal Abdullah should have been hel[d] personally liable under any such theory."

To support its argument, Mecca relies on *Bonner v. Brunson*,[35] for the following proposition:

_____

[34] *Servicemaster Co.*, supra at 752 (1) (footnote omitted).

[35] 262 Ga. App. 521 (585 SE2d 917) (2003).

Just as the so-called 'corporate veil' protects an individual shareholder of a corporation from personal liability for the debts of the separate corporate entity (so long as the corporate forms are maintained) so is a member of a limited liability company (LLC) 'veiled' from personal liability for the debts of the separately maintained LLC entity.[36]

But,

[t]he fundamental flaw in [Mecca]'s approach is a failure to distinguish an officer's personal liability for *torts* he personally participated in, from an officer's personal liability for corporate *debts* due to a piercing of the corporate veil. The former type of liability rests on the notion that an individual is responsible for his own tortious acts. Thus, the focus in this type of liability is whether the individual personally participated in a tort. The latter type of liability rests on the notion that a corporate officer, or owner, who has abused the corporate form by commingling personal and corporate assets, should be held liable for corporate debts and liabilities.[37]

In this regard, the focus of the type of liability in this case is the personal participation of Mohamed and Abdullah in the commission of fraud, not whether they abused the corporate form by commingling personal and corporate assets. Accordingly, the

---

[36] Id. (citations omitted).

[37] *Pazur v. Belcher*, 290 Ga. App. 703, 705 (1) (659 SE2d 804) (2008) (citations and footnotes omitted; emphasis supplied).

piercing of a "corporate veil" need not have been pled in the complaint for the trial court to have entered judgment against Mohamed and Abdullah, personally.

As to whether allegations of personal liability were *proved*, we note that "[l]iability was established by [Mecca]'s default in this case."[38] Accordingly, there is no merit to Mecca's contention.

6. Mecca contends that a purported settlement agreement awarding money to Maestro to settle Maestro's claim against Mecca for recovery of the "service fee" was unenforceable because there was no evidence that the parties had agreed upon the terms.

To the extent that Maestro alleged in the complaint that the parties had "entered into a binding settlement agreement whereby [Mecca] agreed to pay [Maestro]" a sum of money, "[t]he default concludes [Mecca]'s liability on the agreement and estops [Mecca] from offering any defenses which would defeat the right of recovery."[39] Accordingly, there is no merit to this contention.

7. Mecca contends that there was no evidentiary basis to award attorney fees because Maestro's counsel failed to establish the reasonableness of his fees, and

---

[38] *Freese II, Inc.*, supra.

[39] *Servicemaster Co.*, supra (citation omitted).

failed to "state his education and experience and why" the rate he charged was reasonable.

> [T]o authorize an award of attorney fees there must be evidence presented as to what is a reasonable value of the services which have been rendered by the attorney. The evidence as to the reasonableness of the fee does not have to consist of hours devoted to the case, but might only consist of an opinion of an expert, which may include the claimant's attorney.[40]

"Generally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case."[41] "[E]vidence of the reasonableness of the fee arrangement is required, including hours, rates or other indication of the value of the professional services."[42] "A naked assertion that the fees are 'reasonable,'

---

[40] *Medical Office Mgmt. v. Hardee*, 303 Ga. App. 60, 66-67 (2) (b) (693 SE2d 103) (2010) (punctuation and footnotes omitted); see *Gray v. King*, 270 Ga. App. 855, 858 (2) (b) (608 SE2d 320) (2004) (testimony from plaintiff's own attorney would have sufficed to establish reasonableness of fees, but such was not introduced).

[41] *First Bank of Clayton County v. Dollar*, 159 Ga. App. 815, 817 (4) (285 SE2d 203) (1981) (citations omitted).

[42] *Nichols v. Main Street Homes*, 244 Ga. App. 591, 594 (2) (b) (536 SE2d 278) (2000) (punctuation and citations omitted).

22

without any evidence of hours, rates, or other indication of the value of the professional services actually rendered is inadequate."[43]

Maestro's attorney testified that his law firm handled the case from the time suit was filed to the time of trial, which the record reflects was from April 2011 to March 2012. He testified as to the number of hours the firm had worked on the case, and the hourly rate charged. The attorney stated that the fees were reasonable and "in line with the community standard." Counsel's testimony sufficiently established the reasonableness of his fees.[44]

---

[43] *Hsu's Enterprises v. Hospitality Intl.*, 233 Ga. App. 309, 311 (2) (502 SE2d 776) (1998) (citation omitted).

[44] See *Medical Office Mgmt.*, supra (where plaintiff's attorney described the services he provided on behalf of his client and stated in his place that the reasonable value of his services was $12,500, testimony was sufficient to establish reasonableness of fee); *Long v. Marion*, 182 Ga. App. 361, 366-367 (6) (355 SE2d 711) (1987) (attorney's testimony that the appellee was charged at the bottom of the rate range of the prevailing attorney fees in the county and that the hours expended were within the range of the reasonable number of hours which would have been utilized to prepare the case was sufficient evidence of the reasonableness of the fees); compare *In re Serpentfoot*, 285 Ga. App. 325, 329 (3) (b) (646 SE2d 267) (2007) (although counsel stated in his place the amount of the fees paid by client, the hourly billing rate used to calculate those fees, and the fact that the time was expended to answer four petitions and discovery, counsel did not state the number of hours worked on the case or that the fees incurred were reasonable; court vacated portion of judgment awarding attorney fees and remanded the case to the trial court to hold an evidentiary hearing on the amount of the fees); *Gray*, supra (where plaintiff testified as to his attorney's hourly rate, the number of hours spent by the attorney on

*Judgment affirmed. Ellington, C. J., concurs. Dillard, J., concurs in judgment only.*

---

depositions and trial preparation, and the amount of the fees, but there was no testimony by any witness as to the reasonableness of the fees, portion of judgment awarding attorney fees was vacated and case was remanded for a hearing on the amount of attorney fees).