**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**March 13, 2020**

# In the Court of Appeals of Georgia

A19A2099. AVERY v. D. STEPHAN SCHNEIDER, AS PARENT
AND NEXT FRIEND OF ASHTON L. SCHNEIDER et al.

HODGES, Judge.

This case arises out of a June 29, 2007 near-drowning incident involving Ashton L. Schneider. The plaintiffs, D. Stephan and Donna L. Schneider, are the parents and next friends of Ashton, who was a minor at the time of the incident. Troy Avery f/k/a Troy Legg[1] ("Troy") appeals the trial court's final judgment against him after the court struck his answer due to discovery violations. For the reasons that follow, we affirm in part, reverse in part, and remand the case with direction.

---

[1] The record shows that during the course of the trial, Troy Legg legally changed his name to Troy Avery. This opinion will refer to Legg/Avery as "Troy" for convenience.

At the outset, we note that Troy argues in his appellate brief that he was never served with the Schneiders' amended complaint, filed on December 13, 2012, until he was "sitting in the courtroom before the bench trial was to begin" on August 21, 2018. The Schneiders counter that "[t]here is not a single cite to the Amended Complaint in the Findings of Fact and Conclusions of Law upon which the Final Judgment was based" and that Troy "did not, and could not, allege that he was not served with the original Complaint." Although the trial court's Findings of Fact and Conclusions of Law, in fact, do contain references to the Schneiders' amended complaint paragraphs, we have limited our review in this appeal to the allegations contained in the Schneiders' original complaint because the additional facts contained in the amended complaint are unnecessary for disposition of this appeal.

So viewed, the complaint in this case alleged that in 2007, 7-year-old Ashton suffered a near-fatal drowning while swimming at the Rosemont swimming pool in the Chapel Hills Community subdivision where she lived. The incident caused her "permanent neuropsychological impairments, cognitive deficits and neurological injury." On November 14, 2011, the Schneiders sued a number of defendants, including Chapel Hills Community Association, Inc. ("Chapel Hills"), who was responsible for the supervision of Chapel Hills Community Homeowners Association;

2

Premier Association Management ("Premier"), the property management arm of Chapel Hills; USA Pools and a number of related entities (collectively "USA Pools"),[2] hired by Chapel Hills and Premier "to oversee the safety, maintenance and supervision of the pools located in the Chapel Hills Community Subdivision[;]" Stephani Clark, the lifeguard hired by USA Pools and on duty at the time of the incident; and individual defendants Troy and Robert Legg, "the officers, directors and the members of the board of Defendant USA Pools." Because Troy's appeal is the only one before us, this opinion has limited its recitation of the facts to those pertinent to the claims against Troy.

Following the filing of the complaint, Troy, Robert Legg, and USA Pools answered and engaged in discovery until the action was stayed pending the resolution of issues raised in a separately filed declaratory judgment action. In that action, summary judgment was granted to the insurer of USA Pools and all obligations under the insurance contract were obviated. The stay was lifted on May 11, 2016, the

---

[2] The USA Pools entities included USA Pool Management, Inc., USA Pools of Georgia, Inc., USA Pools Construction, Inc., USA Pools of Dallas, Inc., USA Pools of Houston, Inc., USA Pools of New York, Inc., USA Pools of North Carolina, Inc., USA Pools of Pennsylvania, Inc., and USA Pools of Tennessee, Inc. These entities were collectively referred to in the complaint, and the trial court found they were "alter-ego/related entities" formed by Troy and his father, Robert Legg.

Schneiders moved to re-open discovery, and their request was granted.[3] Troy, Robert Legg, and USA Pools, however, "willfully and intentionally refused to participate in discovery during the reopened discovery period[,]" even after the trial court ordered them to respond and participate in discovery. As a result, on May 8, 2018, the trial court struck the answers of, and entered default judgment against, Troy, Robert Legg,[4] and USA Pools due to their refusal to participate in the litigation and their willful failure to comply with the court's order.

On August 21, 2018, the trial court held an evidentiary hearing, during which the Schneiders introduced 7 deposition transcripts, the testimony of 4 witnesses, and 30 exhibits without objection.[5] Despite being present prior to the evidentiary hearing,

---

[3] At some point, all defendants except the Leggs and USA Pools were either dismissed or settled their claims.

[4] Robert Legg subsequently reached a settlement agreement with the Schneiders.

[5] Pretermitting whether the trial court properly admitted and/or considered this evidence to support Troy's liability, we note that Troy failed to object to the evidence or the procedure utilized during the damages hearing despite an opportunity to do so. "[O]ne cannot acquiesce in deficient procedures and then contest them on appeal, and we cannot ignore the fact that [Troy] contributed to this deviation by his failure to participate in these proceedings despite being given notice of the damages hearing[.]" *Hill v. Johnson*, 210 Ga. App. 824, 825-826 (437 SE2d 801) (1993). Moreover, Troy has not enumerated as error the admission of this evidence, the trial court's consideration of this evidence, or the procedure employed at the damages hearing.

Troy left the courtroom before the evidentiary hearing commenced. Troy's attorney, however, attended the hearing and cross-examined a few of the witnesses. After considering "all of the evidence and testimony," reviewing the entire record, and hearing the arguments of counsel, the trial court issued its 36-page "Findings of Fact and Conclusions of Law" and "Final Judgment" against Troy. Specifically, the court found the corporate veil of USA Pools had been pierced and Troy was personally liable to the Schneiders for negligence, intentional fraud, and punitive damages. The court awarded the Schneiders $500,000 in past pain and suffering, $500,000 in future pain and suffering, $1,000,000 on the fraud claim, and $3,000,000 in punitive damages.

Troy appeals, alleging the trial court erred in (1) finding him liable for negligence because there were no factual bases to find a duty, proximate cause, or damages, (2) finding him liable, after piercing the corporate veil, for any alleged duty of USA Pools to Ashton because there were no factual bases to find that USA Pools' employee Clark was inadequately trained or that this was a proximate cause of

"Grounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct." (Citation and punctuation omitted.) *Koules v. Dolce Group Atlanta, LLC*, 326 Ga. App. 637, 639, n. 2 (757 SE2d 233) (2014). See also *EarthLink, Inc. v. Eaves*, 293 Ga. App. 75, 76 (1) (666 SE2d 420) (2008) (court need not address issue not enumerated as error).

Ashton's injuries, (3) finding him individually liable for any negligence of Clark because there were no factual bases to find Clark was inadequately trained or that this was a proximate cause of Ashton's injuries, (4) finding him liable for fraud because the evidence did not include all the elements of fraud or proximate cause, (5) finding USA Pools' corporate veil had been pierced because the companies violated no duty to Ashton and were not the proximate cause of Ashton's injuries, and (6) awarding punitive damages against him because he had no underlying liability for which punitive damages could be appropriately applied.

1. In three related enumerations of error, Troy contends the trial court erred in finding that he and USA Pools were liable for negligently causing Ashton's injury and damage. Specifically, Troy asserts there were no factual bases to find (1) that he or USA Pools owed Ashton or her parents a duty, (2) that any negligence in inadequately training the lifeguard constituted a breach of duty, and (3) that even if Troy or USA Pools breached a duty owed to Ashton and her parents, such a breach proximately caused Ashton's injuries. We disagree with Troy's assertion that the factual allegations with which he takes issue were not well-pled in the Schneiders' complaint. Moreover, additional evidence included in the record and introduced at the evidentiary hearing supports the trial court's conclusions.

6

OCGA § 9-11-55 (a) provides that when a case is in default, the plaintiff is entitled to judgment "as if every item and paragraph of the complaint or other original pleading were supported by proper evidence[.]" Georgia courts have consistently interpreted this statutory provision, holding that

> a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery.

(Citation and punctuation omitted.) *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013); *Blue View Corp. v. Bell*, 298 Ga. App. 277, 278 (1) (679 SE2d 739) (2009). That being said, although a judgment by default operates

> as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration[,] [c]onclusions of law and facts not well pleaded and forced inferences are not admitted by a default judgment.

(Citation and punctuation omitted.) *Willis*, 321 Ga. App. at 497. A default "does not require blind acceptance of a plaintiff's erroneous conclusions of law. Nor does a default preclude a defendant from showing that under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover." Id. at 498; see also *Blue View Corp.*, 298 Ga. App. at 278-279 (1).

7

With these principles in mind, we turn to the complaint filed by the Schneiders and the facts deemed admitted by USA Pools and Troy by virtue of their default. The allegations conclusively establish that USA Pools was hired "to oversee the safety, maintenance and supervision of the pools located in the Chapel Hills Community Subdivision." Troy and USA Pools held USA Pools out as "a qualified pool management company" with "properly trained and qualified lifeguards to protect the members of the Chapel Hills Community Homeowners Association."

At the time of the incident, Clark was working as the lifeguard on duty at the subdivision pool. The allegations deemed admitted demonstrate that Clark "was not in a position to observe Ashton . . . in the pool or to see the bottom of the pool because [she] was monitoring the door for persons entering and leaving the pool and otherwise not paying attention to the children and other persons swimming in the pool." Clark did not witness Ashton's submersion or participate in lifesaving efforts, in part, because "she was not paying attention" and "Defendant USA Pools failed to properly train and supervise . . . Clark in proper lifeguarding protocols and lifesaving techniques." The allegations conclusively establish that "Clark also failed to employ proper post-drowning lifesaving techniques after she became aware of the incident because she was improperly trained and supervised by Defendant USA Pools." As a

8

result, the complaint alleged that "Defendant USA Pools and its employee, Defendant Stephani R. Clark, negligently caused and contributed to the drowning of Ashton L. Schneider."

The complaint alleged negligence against all the defendants, and USA Pools specifically, based on the following facts and legal conclusions:

> Defendant USA Pools owed Ashton L. Schneider a duty to reasonably protect the homeowners and guests at the Rosemont swimming pool in the Chapel Hills Community Subdivision.
>
> All Defendants[, including USA Pools,] breached that duty by failing to provide a reasonably safe premises . . . by failing to have properly trained and staffed lifeguard personnel on the premises.
>
> Defendant USA Pools is vicariously liable to Plaintiffs for the negligence of Defendant Stephanie R. Clark because Defendant Stephanie R. Clark was acting in the line and scope of her employment with Defendant USA Pools at the time of the incident.[6]
>
> Defendant USA Pools is also independently liable to Plaintiffs for the negligent hiring, retention, supervision and training of Defendant Stephanie R. Clark at the time of the incident.
>
> As a direct and proximate result of the negligence of Defendant USA Pools, Ashton L. Schneider drowned causing her permanent neuropsychological impairments, cognitive deficits and neurological injury.

---

[6] Although the caption of the complaint and numerous paragraphs within the complaint refer to the lifeguard as "Stephani" R. Clark, other paragraphs in the complaint refer to her as "Stephanie" R. Clark. This is the same individual.

As a direct and proximate result of Defendant USA Pool's negligent and wrongful conduct, Plaintiffs are entitled to an award of damages for future medical and psychological care once Ashton L. Schneider reaches the age of majority, pain and suffering, emotional anguish, and all other general and special damages available under Georgia law in an amount to be determined by a jury of her peers all in excess of Five Million Dollars ($5,000,000.00) against each of the Defendant USA Pools.

In addition to the above-recited facts and allegations, the record further demonstrates: that although USA Pools held itself out as a qualified pool management company with sufficient skill and knowledge of the business, Troy was not familiar with basic concepts and minimum safety standards related to lifeguarding and pool safety; USA Pools also did not provide training for its lifeguards or perform a skills test to ensure they had the requisite skills and competency; and USA Pools did not conduct drills or have an emergency plan in place. Moreover, Clark admitted that forcing her to act as both a gate attendant and a lifeguard made it difficult for her to watch the pool and see the swimmers. This evidence was relevant to the court's award of damages, including punitive damages.

In addition, testimony and medical records introduced at the evidentiary hearing showed that Ashton suffered three infantile seizures when she was approximately eight months old, but she did not suffer another seizure until after the near-drowning incident when she was seven-years-old. When Ashton was pulled from

10

the pool, she was cyanotic and required chest compressions. Her initial coma rating was indicative of brain injury following the near-drowning event. Since the near-drowning incident, Ashton suffers from regular seizures requiring constant medication, migraine headaches, processing difficulties, poor memory, social difficulties, and a host of other neurological and academic issues. Ashton did not suffer any developmental delays or neurological conditions prior to the near-drowning incident.

Based on the well-pled complaint allegations, fair inferences and conclusions of fact to be drawn from those allegations, as well as other evidence in the record and presented at the evidentiary hearing, the trial court did not err in concluding that, at a minimum, Troy and USA Pools owed a duty to provide a sufficient number of qualified lifeguards sufficiently trained and prepared to respond to pool emergencies, Troy and USA Pools breached that duty, and the breach of that duty proximately caused Ashton to suffer a near-fatal drowning and traumatic brain injury. Contrary to Troy's argument, this Court has recognized that lifeguards and pool management companies may owe a duty to swimmers who suffer injuries at a pool:

> There is evidence that the lifeguard provided by [the pool management company] was inexperienced and may have been negligent in failing to control the boisterous activity around the pool. Accordingly, a genuine

11

> issue of material fact remains as to [the pool management company's] . . . liability for an injury that [the plaintiff] may have suffered as the proximate result of that uncontrolled boisterous activity.

*Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821, 824 (4) (415 SE2d 654) (1992); see also *Walker v. Daniels*, 200 Ga. App. 150, 155-157 (2) (407 SE2d 70) (1991) (although exact manner of drowning was unknown, finder of fact was authorized to conclude that lifeguard proximately caused death due to her failure to exercise due diligence); *Ward v. City of Millen*, 162 Ga. App. 148, 150-151 (290 SE2d 342) (1982) (reversing directed verdict for lifeguard because it was for the trier of fact to resolve issue of negligence) (physical precedent only); *Morehouse College v. Russell*, 109 Ga. App. 301, 320 (2) (136 SE2d 179) (1964) (corporate defendant could be liable for failing to provide sufficient number of competent and experienced lifeguards and for respondeat superior for any negligence of the lifeguards).

The bulk of Troy's arguments compare this case to *Peacock v. Nautix Lifeguards & Maintenance*, an appeal we affirmed in accordance with Court of Appeals Rule 36. See 315 Ga. App. XXIV (A12A0038, May 11, 2012) (unpublished). Pretermitting whether that appeal addressed the issues in this case, Troy's reliance on our unpublished opinion is misplaced because Rule 36 specifically states that such opinions "have no precedential value." In addition, although the factual situation

12

involving a near-drowning incident may have been similar in *Peacock*, the procedural posture was dramatically different than this case. Here, Troy is in default, and, as stated above, the well-pled complaint allegations and fair inferences and conclusions of fact to be drawn from the allegations, in conjunction with the evidence introduced without objection at the evidentiary hearing, support the trial court's judgment against Troy. We therefore affirm that ruling.

2. Troy maintains the trial court erred in finding him liable for fraud to the Schneiders for misrepresentations made to Chapel Hills. We agree.

OCGA § 51-6-2 (a) defines the tort of fraud as "[w]illful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury[.]" The statute continues:

> In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

OCGA § 51-6-2 (b). In short, the tort of fraud has five elements: (1) a false representation made by a party; (2) scienter or knowledge of the misrepresentation; (3) an intention to induce another party to act or refrain from acting; (4) justifiable reliance by the other party on the misrepresentation; and (5) damage to the other

13

party. See *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989). The absence of any of these elements causes a fraud claim to fail. See *Nebo Ventures v. NovaPro Risk Solutions*, 324 Ga. App. 836, 839 (1) (752 SE2d 18) (2013). In addition, "[i]n all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity." OCGA § 9-11-9 (b). "A default does not preclude a defendant from showing that under the facts as deemed admitted, no [fraud] claim existed which would allow the plaintiff to recover." *Mecca Constr. v. Maestro Investments*, 320 Ga. App. 34, 41 (3) (b) (739 SE2d 51) (2013) (physical precedent only); see also *Freese II, Inc. v. Mitchell*, 318 Ga. App. 662, 663-664 (2) (734 SE2d 491) (2012).

We must look to the well-pled facts alleged in the Schneiders' complaint, which are deemed admitted by the default of Troy and USA Pools, to determine if those facts are sufficient to support a claim of fraud by the Schneiders against Troy and USA Pools. In this regard, the complaint alleged as follows under the "Fraud" count:

> Defendants Robert V. Legg and Troy A. Legg intentionally and willfully misrepresented that their corporations, Defendant USA Pools, were a qualified pool management company with sufficient insurance to protect

14

the public and Chapel Hills Community Homeowners Association from liability arising out of an insurable event.[7]

Defendants Robert V. Legg and Troy A. Legg intentionally and willfully provided Defendants Chapel Hills Community Association, Inc. and Premier Association Management with false proof of insurance to obtain the contract to provide pool services to Chapel Hills Community Subdivision.

Defendants Robert V. Legg and Troy A. Legg intentionally and willfully misrepresented to the public at large and continue to misrepresent to the public at large that Defendant USA Pools carries Five Million Dollars ($5,000,000.00) of combined insurance coverage extending a total of Fifteen Million Dollars ($15,000,000.00) in liability insurance to the entities, cities, municipalities or otherwise that engage their services for pool management and maintenance.

Defendants Robert V. Legg and Troy A. Legg knew their misrepresentations were false but willfully made them in order to induce the members of the Chapel Hills Community Homeowners Association, of which Plaintiffs are a member, to rely upon said inducements.

Plaintiffs, as members of the Chapel Hills Community Homeowners Association, and Defendants Chapel Hills Community Association, Inc. and Premier Association Management reasonably relied upon these inducements to their detriment because Defendant USA Pools has no

---

[7] A previous paragraph alleged that "Defendants Robert V. Legg and Troy A. Legg intentionally acted on the behalf of Defendant USA Pools when they materially misrepresented to Defendants Chapel Hills Community Association, Inc. and Premier Association Management that Defendant USA Pools was a qualified pool management company with sufficient insurance to indemnify itself in the case of negligence, property damage, or some other insurable event."

15

insurance that covers them for insurable events arising out of their duties as a pool management service.[8]

As a direct and proximate result of Defendants Robert V. Legg and Troy A. Legg's intentional and willful misrepresentations, Plaintiffs are entitled to an award of damages for future medical and psychological care once Ashton L. Schneider reaches the age of majority, pain and suffering, emotional anguish, and all other general and special damages available under Georgia law in an amount to be determined by a jury of her peers all in excess of Five Million Dollars ($5,000,000.00) against Defendants Robert V. Legg and Troy A. Legg, individually.

Prior complaint paragraphs also alleged that

Defendants Robert V. Legg and Troy A. Legg intentionally misrepresented Defendant USA Pools when they averred to Defendants Chapel Hills Community Association, Inc. and Premier Association Management that Defendant USA Pools had properly trained and qualified lifeguards to protect the members of the Chapel Hills Community Homeowners Association.

Paragraphs of the complaint further alleged that Chapel Hills and Premier "materially rel[ied] upon Defendants Robert V. Legg and Troy A. Legg's misrepresentations when making the decision to hire Defendant USA Pools as the swimming pool management agency."

---

[8] A prior complaint paragraph alleged that "Defendant USA Pools has no insurance to insulate the homeowners, itself, and Defendants Chapel Hills Community Association, Inc. and Premier Association Management from any claim arising out of an insurable event."

16

The trial court found, "based upon the record, the evidence entered at the default evidentiary hearing, and the facts admitted in [the Schneiders'] well-pled complaint," that sufficient facts established that Troy, individually and jointly with USA Pools, materially represented that the company had sufficiently skilled lifeguards and adequate and applicable insurance to meet their obligations to the Schneiders, that these representations were false, that the Schneiders reasonably relied upon these false representations to their detriment, and that Ashton suffered damages as a result. Specifically, the complaint alleged, and the trial court found, that Troy and USA Pools made false representations in order to induce members of the Chapel Hills Community Homeowner's Association to hire them, and that the Schneiders, as members of the Chapel Hills Community Homeowner's Association, relied upon these false representations to their detriment. In fact, the Schneiders' testified at the evidentiary hearing that one of the reasons they chose to live in the Chapel Hills subdivision was the protection of a lifeguard at the community pool.

However, nowhere in the complaint do the Schneiders make a well-pled, factual allegation that Troy or USA Pools ever made any false representations directly to Ashton or them. Instead, the complaint, on its face, bases the Schneiders' claim for fraud solely on their status as members of the homeowner's association that

17

contracted with Troy and USA Pools for pool management services. Evidence submitted at the evidentiary hearing likewise does not demonstrate that Troy or USA Pools ever made any fraudulent representations directly to Ashton or the Schneiders. Under the circumstances in this case, while the homeowner's association might have a claim for fraud against Troy and USA Pools, the Schneiders do not cite any authority allowing an association member to sue an individual for fraud based on representations made to the association of which the association member was unaware.

"The general rule in Georgia is that actionable fraud must be based upon a misrepresentation made *to* the defrauded party, and relied upon *by* the defrauded party." (Citation and punctuation omitted; emphasis in original). *UWork.com, Inc. v. Paragon Technologies*, 321 Ga. App. 584, 598 (5) (740 SE2d 887) (2013). In this case, even deeming all allegations in the complaint as admitted, the Schneiders have failed to state a claim for fraud against USA Pools and Troy because they have failed to demonstrate that USA Pools and Troy made any misrepresentations *to them* or that they were even aware of any misrepresentations made by USA Pools and Troy to the homeowner's association. In addition, the Schneiders' complaint does not allege any

18

breach of contract or that they are third-party beneficiaries of the contract between the homeowner's association and USA Pools.[9]

Therefore, contrary to the Schneiders' contention and the trial court's conclusions, the facts pled by the Schneiders and deemed admitted by Troy and USA Pools, as a matter of law, do not establish or support a claim that Troy and USA Pools are liable to Ashton or the Schneiders for fraud. See generally *Mills v. Parker*, 253 Ga. App. 620, 624 (1) (b) (560 SE2d 42) (2002) (trial court erred in granting summary judgment as to fraudulent misrepresentation claim where no false representation was established). The trial court thus erred in entering a default judgment in favor of the Schneiders on their claim for fraud, and we reverse that ruling.

3. Troy next contends the trial court erred in piercing the corporate veil of USA Pools to find him liable to the Schneiders when USA Pools violated no duty to the Schneiders and was not the proximate cause of Ashton's injuries. Troy does not allege that the trial court improperly pierced the corporate veil pursuant to the allegations deemed admitted in the complaint. Rather, he asserts that USA Pools

---

[9] We express no opinion as to the viability of such claims.

19

owed no duty or damages to the Schneiders, and, therefore, there was no need to pierce the corporate veil. This claim fails for the reasons set forth in Division 1.

4. In his final enumeration of error, Troy asserts the trial court erred in awarding punitive damages against him. His sole contention on appeal is that the award of punitive damages must fail because the elements of fraud against him were not supported by the evidence. Although Troy is correct that the award of punitive damages fails with respect to the Schneiders' fraud claim based on our holding in Division 2, the facts may warrant punitive damages based on USA Pools' and Troy's negligent conduct. Because the trial court's order is unclear with respect to its ground for imposing punitive damages, we remand for the court to reconsider the issue of punitive damages consistent with this opinion.

Pursuant to OCGA § 51-12-5.1 (b), punitive damages may be awarded in tort actions "in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Punitive damages are awarded to "punish, penalize, or deter a defendant[,]" OCGA § 51-12-5.1 (c), and they are limited to $250,000, unless the tort case arises from product liability or it is found that the defendant acted, or failed to

20

act under certain circumstances, including "with the specific intent to cause harm[.]"

OCGA § 51-12-5.1 (e), (f), (g).

> Citing OCGA § 51-12-5.1, this Court repeatedly has stated,
>
> [s]omething more than the mere commission of a tort is necessary for the imposition of punitive damages. Negligence alone, even gross negligence, is insufficient to support punitive damages. Punitive damages cannot be imposed without a finding of culpable conduct based upon either intentional and wilful acts, or acts that exhibit an entire want of care and indifference to consequences.

(Citation omitted.) *Archer Forestry v. Dolatowski*, 331 Ga. App. 676, 678 (1) (771 SE2d 378) (2015); see also *Howard v. Alamo Corp.*, 216 Ga. App. 525, 525-526 (455 SE2d 308) (1995). However, contrary to Troy's contention, punitive damages may be awarded in negligence actions if authorized by the facts. See, e.g., *Miller v. Crumbley*, 249 Ga. App. 403, 405 (3) (548 SE2d 657) (2001) (punitive damages recoverable in automobile collision case alleging negligence where collision resulted from a pattern or policy of dangerous driving); *Menchio v. Rymer*, 179 Ga. App. 852, 854 (3) (348 SE2d 76) (1986) (punitive damages would have been authorized if actual damages had been awarded for a negligence claim); *Pound v. Medney*, 176 Ga. App. 756, 762-763 (5) (337 SE2d 772) (1985) (facts authorized jury charge that punitive damages could be awarded for either negligence or fraud counts).

21

That being said, the trial court in this case found that the following facts indicated Troy's specific intent to do harm to the Schneiders:

> Defendants Legg-Avery and USA Pools complete lack of knowledge and skill required to provide lifeguard services to the Chapel Hills community; failure to hire, train and supervise qualified lifeguards for the Rosemont Pool; failure to purchase applicable and sufficient liability insurance as promised, *in light of their specific representations to meet each of these duties*, showed the type of willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care constituting a specific intent to do harm, and therefore, entitling the Plaintiffs to recover punitive damages pursuant to O.C.G.A. § 51-12-5.1.

(Emphasis supplied.) Then, in the analysis section, the trial court noted:

> The facts admitted by default and entered into evidence establishes by clear and convincing evidence that Legg-Avery had individual and *specific intent to commit fraud* with the intention and purpose of deceiving and injuring Plaintiffs as members of the Chapel Hills HOA when he fraudulently represented that USA Pools provides qualified and trained lifeguards and has adequate liability insurance to satisfy the requirements of the contract.
>
> Accordingly, Plaintiffs are entitled to judgment on their claim for punitive damages, and the requisite showing of a specific intent to do harm has been shown so that there is no statutory cap on the punitive damages entered by the court in its judgment against Defendant Legg-Avery, individually, and Defendants Legg-Avery and USA Pools, jointly and severally.

(Emphasis supplied.) It appears from the language employed by the trial court that it based its award of punitive damages on Troy's "specific representations" and

22

"specific intent to commit fraud[,]" without addressing whether punitive damages should be awarded based on Troy's liability for negligence.

Accordingly, we hereby reverse the award of punitive damages and remand the case for the trial court to determine whether punitive damages are warranted based strictly on the Schneiders' negligence claim.[10]

5. In his dissent, Presiding Judge Dillard notes that this case is a mess and should be remanded to allow the trial court to "tidy things up a bit before addressing the merits." According to the dissent, the trial court should not have admitted and considered evidence of liability at the default damages trial. While we agree that the trial court's order is inartfully drafted and appears to conflate issues of liability and damages, we do not believe it is substantively reversible or requires a remand prior to reaching the merits.

---

[10] The Schneiders have filed a motion requesting frivolous appeal sanctions under Georgia Court of Appeals Rule 7 (e) and OCGA § 5-6-6, arguing that "by virtue of the entry of the default judgment, pursuant to OCGA § 9-11-55(a), [Troy] has waived any right to raise any issue on appeal[,]" especially given his refusal to comply with the trial court's order and participate in discovery or trial court proceedings. However, because Troy was within his right to appeal the trial court's default judgment and attempt to attack the court's conclusions of law, facts not well pleaded, and forced inferences from those facts, we hereby deny the Schneiders' motion for sanctions. See *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 498 (740 SE2d 413) (2013); *Blue View Corp. v. Bell*, 298 Ga. App. 277, 278 (1) (679 SE2d 739) (2009).

23

At the outset, it is important to point out, as noted in Footnote 5 of this Opinion, that Troy failed to object below to the admission of any liability evidence, the consideration of any liability evidence, or the procedure employed at the damages trial, and he has not enumerated as error, or even argued in his appellate brief, the propriety of the trial court's admission of this evidence, consideration of this evidence, or procedure employed at the damages trial. Thus, the issues raised by the dissent are not properly before this Court. The dissent acknowledges Troy's failure to object – either below or on appeal – to the trial court's consideration of evidence presented at the damages hearing, but, nonetheless, argues that a remand is necessary to enable this Court to adequately review the trial court's judgment and to provide fairness to the parties. We disagree for a number of reasons in addition to Troy's failure to preserve or raise any error associated with the dissent's arguments.

First, we disagree with the dissent's assertion that a "vast majority of the court's factual findings are unrelated to a determination of the amount of damages to which the Schneiders are entitled." Punitive damages were at issue in this case, and damages, particularly punitive damages, often are inextricably intertwined with evidence of liability. In fact, the degree of liability becomes an issue when punitive damages are sought. The punitive damages statute provides:

> If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.

OCGA § 51-12-5.1 (d) (2). Thus, the Schneiders were obligated to introduce evidence supporting an award of punitive damages and demonstrating "what amount of damages will be sufficient to deter, penalize, or punish [Troy] in light of the circumstances of the case." Contrary to the dissent's assertion, this evidence would include facts such as the lack of lifeguard training and supervision by Troy and USA Pools, minimum safety standards set by the National Spa and Pool Institute, contractual insurance requirements not met by Troy and USA Pools, and Troy's history with USA Pools and its insurance company. Such evidence was relevant and necessary for the trial court to determine whether punitive damages were appropriate and to decide within the limits of the statute how much to award.

Second, even if the evidence submitted at the damages hearing and considered by the trial court was not limited to the issue of damages, liable is liable. The dissent cites a number of cases establishing that evidence may not be admitted or considered in a default damages trial to undermine a default or alter a finding of liability. However, none of the cases address the situation at hand, where a plaintiff introduces

25

evidence supporting a finding of liability at the damages trial. Although a plaintiff is not *required* to introduce evidence of liability in a damages trial following default, this Court has never stated, contrary to the dissent's assertion,[11] that a plaintiff is precluded from doing so. In fact, this Court has held that when liability is not an issue at trial due to default, "any arguments premised on purported evidentiary error concerning the issue of liability are simply misplaced." *Winzer v. EHCA Dunwoody, LLC*, 277 Ga. App. 710, 712 (1) (627 SE2d 426) (2006). This reasoning is sound because liable is liable. Troy's liability following default is not affected by additional evidence of liability that may have been presented at the damages trial. And, this Court has affirmed default cases where additional liability evidence was submitted at the damages trial and considered by the trial court. See *Waller v. Rymer*, 293 Ga. App. 833, 834 (668 SE2d 470) (2008) (affirming compensatory and punitive damages

[11] The dissent cites *Hooker v. Roberson*, 316 Ga. App. 345, 345-346 (1) (729 SE2d 484) (2012), for the proposition that a trial court errs when, after entering a default judgment, it "consider[s] whether the party who filed the complaint also proved liability by presenting evidence at a bench trial." However, like the other cases cited by the dissent, *Hooker* addressed a situation where the defendant introduced evidence at the damages trial to *dispute* liability. The case clearly states that the plaintiff did *not* present evidence demonstrating the defendants' liability at the damages trial. Id. at 345. This Court held that the plaintiff was not required to prove liability at the damages trial, and the defendants were not entitled to present evidence disputing liability at the damages trial. The case did not address whether the plaintiff could have introduced evidence supporting liability at the damages trial.

26

awards following default where "[t]he facts admitted by way of default [were] supported by the evidence adduced at trial"). The trial court's reliance on additional evidence of liability submitted at the damages hearing in this case is not internally inconsistent with Troy's default and does not undermine the default. Accordingly, the trial court did not err in admitting and considering any additional evidence presented by the Schneiders at the damages trial, or, if error, it was harmless, even if this evidence was not related to punitive damages.

Third, the dissent believes that Troy's due process rights were violated because he was not permitted to present evidence at the damages trial. However, nothing in the trial transcript indicates that the trial court precluded Troy from presenting evidence. Indeed, Troy had an opportunity to attend the evidentiary trial on damages, yet chose to leave immediately prior to the trial. In addition, although Troy's attorney attended the damages trial, he chose not to object to the admission of any evidence presented by the Schneiders and chose not to introduce any evidence to support a mitigation of those damages. While Troy would not have been permitted to introduce evidence disputing liability, he certainly could have presented evidence showing that "under the facts as deemed admitted, no claim existed which would allow the plaintiff to recover." (Citation and punctuation omitted.) *Willis v. Allstate Ins. Co.*, 321 Ga.

27

App. 496, 498 (740 SE2d 413) (2013); see also *Blue View Corp. v. Bell*, 298 Ga. App. 277, 278-279 (1) (679 SE2d 739) (2009). In fact, that is the very reason this Opinion reverses the court's award for fraud in Division 2 and denies the Schneiders's request for frivolous appeal penalties in footnote 10. Troy also would have been permitted to introduce evidence to contest the amount of damages, including the amount of punitive damages. See *Zhong v. PNC Bank*, 345 Ga. App. 135, 142 (2) (c) (812 SE2d 514) (2018) (while a defaulting party may not deny the admitted injuries or its liability for those injuries, it may dispute the amount of damages "even to the point of showing their nonexistence") (citation and punctuation omitted). Accordingly, we do not believe there is an issue of fundamental unfairness associated with the admission of the evidence or the procedure employed at the damages trial. We cannot ignore the fact that any error would be "of [Troy's] own making due to [his] failure to appear at the damages hearing and participate in the proceedings despite being afforded an opportunity to do so." *Wal-Mart Stores v. Forkner*, 221 Ga. App. 209, 211 (2) (471 SE2d 30) (1996).

As for the proper standards of review to be applied, this Court has held that in a damages trial following default, the preponderance of the evidence standard is applicable with respect to liability for compensatory damages, while the clear and

convincing evidence standard is applicable with respect to liability for punitive damages. *Waller*, 293 Ga. App. at 835 (1). The trial court's Final Judgment in this case specifies that it found compensatory damages proven by a preponderance of the evidence and punitive damages proven by clear and convincing evidence. Thus, the court employed the correct legal standards of review in awarding damages. As for the language in the court's Final Judgment noting that it found "by a preponderance of the evidence" that the Schneiders were entitled to recover damages and that the corporate veil had been pierced, this language simply indicates that the well-pled allegations of the complaint were sufficient to support liability, a finding necessary to sustain a default judgment award given that the defendant is permitted after default to demonstrate that no claim existed under the facts admitted which would allow the plaintiff to recover. We note that the Final Judgment in this case does not indicate that it considered evidence of liability introduced at the evidentiary damages trial, though we believe it would have been authorized to do so in this case for the reasons discussed above.

As for our standard of review, "[o]n appeal, we review a trial court's entry of default judgment for abuse of discretion." *McKethan v. Wells Fargo Bank*, 334 Ga. App. 404 (779 SE2d 671) (2015) (physical precedent only). Moreover, because

29

punitive damages were at issue, our standard of review must also be applied in conjunction with the requirement under OCGA § 51-12-5.1 (b) that the evidence must be "clear and convincing." In the case of a bench trial, the amount of damages awarded is within the enlightened conscience of the trial judge and "will not be disturbed on appeal unless it is so excessive or inadequate as to shock the judicial conscience to the degree that a judgment entered thereon constitutes an error of law." (Punctuation and footnote omitted.) *Wilson Welding Svc.*, 234 Ga. App. at 620. In this case, although it appears clear and convincing evidence would support an award of punitive damages – as evidenced by the trial court's Findings of Fact – we have reversed the award of punitive damages and remanded for the trial court to determine whether punitive damages are warranted based strictly on the Schneiders's negligence claim rather than their fraud claim. However, we do not believe the trial court abused its discretion in awarding compensatory damages based on Troy's default.

Although the trial court's Final Judgment could have been clearer, we do not believe it constitutes reversible error. The additional evidence of liability submitted by the Schneiders at the damages trial and considered by the trial court was either relevant because it related to punitive damages or superfluous because the additional facts did not undermine the default judgment. Although the dissent implies that

30

allegations in the Schneiders's complaint conflict with the trial court's factual findings on liability, there is no evidence of any conflict in this case, and the trial court's judgment is not substantively inconsistent with Troy's default. With this in mind, and given Troy's failure to attend the damages hearing, object to the evidence, or enumerate any error with respect to the evidence considered by the trial court, we respectfully disagree with the dissent's view that this case should be remanded for a new evidentiary hearing where the trial court would clarify the type of evidence it would be considering at an evidentiary hearing following default.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Gobeil, J. concurs in the judgment only. Dillard, P. J., dissents.*

A19A2099. AVERY v. D. STEPHAN SCHNEIDER, AS PARENT

AND NEXT FRIEND OF ASHTON L. SCHNEIDER, et al.


DILLARD, Presiding Judge, dissenting.

This case is a mess. After the trial court struck Troy's answer and entered a default judgment against him, the only thing left to be done was to hold a hearing on damages—liability having already been established. But that isn't what happened. Instead, the court held a full-blown bench trial, during which an extensive amount of evidence was presented to "establish" Troy's liability. And now, this indecipherable, hybrid order has been dropped at our feet to sort out. Unfortunately, there's no way of doing that without first knowing which standard of review and precedent to apply. So, we need to remand this case, and let the trial court tidy things up a bit before addressing the merits.[1]

---

[1] In light of this dissent, the majority opinion is physical precedent only. See Ct. App. R. 33.2 (a) (1) ("An opinion is physical precedent only (citable as persuasive, but not binding, authority) . . . with respect to any portion of the published opinion in which any of the panel judges . . . dissent.").

To put it plainly, the trial court needs to pick a lane. It must decide whether to base Troy's liability for the Schneiders' claims on the default judgment it entered (*i.e.*, solely on the well-pleaded allegations of the complaint)[2] *or* rescind the default and enter a judgment based on the evidence presented at the bench trial by *both* parties.[3] The trial court's order is difficult (if not impossible) to review as it appears

[2] A defendant in default is "in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged." *Fink v. Dodd*, 286 Ga. App. 363, 364 (1) (649 SE2d 359) (2007) (punctuation omitted); *see also* OCGA § 9-11-55 (a) ("If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended" or "opened as a matter of right," and if the default stands, "the plaintiff at any time thereafter shall be entitled to verdict and judgment by default . . . as if every item and paragraph of the complaint or other original pleading were supported by proper evidence . . . ."). Indeed, a default judgment "concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery." *Fink*, 286 Ga. App. at 364 (1) (punctuation omitted). Nevertheless, it's axiomatic that a default "does not result in the admission of allegations that *are not well-[pleaded]* or that are the result of forced inferences." *Id.* at 365 (1) (punctuation omitted) (emphasis supplied). Thus, while a default operates "as an admission of the well-[pleaded] factual allegations in a complaint, it does not admit the legal conclusions contained therein." *Id.*

[3] *See Cox Interior, Inc. v. Bayland Props., LLC*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008) ("The plaintiff in a civil matter has the ultimate burden of proving its case by a preponderance of the evidence. . . . We will not disturb the trial court's findings if there is any evidence to support them, and we view the evidence in the light most favorable to support the trial court's verdict."); *see also City of Atlanta v. Hofrichter/Stiakakis*, 291 Ga. App. 883, 884 (663 SE2d 379) (2008) ("When the trial court sits as the trier of fact, its findings and conclusions have the effect of a jury verdict. Thus, we will not disturb the trial court's decision if there is

2

to do both, which is impermissible,[4] and we are only left to guess what it meant to do. But that's not the role of an appellate court. We don't play guessing games. We correct errors and ensure fair proceedings; and here, it's unclear which standard of review to apply to these curious proceedings.

Let's briefly recap what happened below. After entering the default judgment against Troy, the trial court held what it first described as a "bench trial" and later characterized as "an evidentiary hearing on damages," at which the Schneiders introduced seven deposition transcripts, the testimony of four witnesses, and 30 exhibits. And even a cursory examination of the record reveals this evidence was not limited to the issue of damages. This is also evident from the court's order, which includes extensive "findings of fact" gleaned almost exclusively from depositions and other evidence presented at the hearing, with only scant citations to the complaint. Indeed, the vast majority of the court's factual findings are unrelated to a determination of the amount of damages to which the Schneiders are entitled—*e.g.*,

---

any evidence to support it. Additionally, . . . we view the evidence in the light most favorable to the trial court's judgment.").

[4] *See, e.g.*, *Hooker v. Roberson*, 316 Ga. App. 345, 345-46 (1) (729 SE2d 484) (2012) (holding that trial court erred when, after entering a default judgment, it considered whether the party who filed the complaint also proved liability by presenting evidence at a bench trial).

findings regarding lifeguard training and supervision, minimum safety standards set by the National Spa and Pool Institute, certain contractual insurance requirements, and Troy's history with UPMI. Moreover, other language used by the trial court in its order is striking: "This [c]ourt finds as a matter of law that the [the Schneiders] did carry their *burden* and *proved* by a preponderance of *the evidence* that [they] are entitled to recover damages for . . . negligence and fraud . . . [,]"[5] and that the Schneiders "showed by a preponderance of *the evidence* that the corporate veil of the USA Pools shall be pierced and that [Troy] will be personally *liable* for the Court's judgment."[6]

Then, after issuing its initial order, the trial court entered a final judgment, once again establishing that it considered evidence presented at the "damages" hearing when making liability findings. Specifically, the judgment provides, in part:

> 1. The Court finds that [Troy] over extended his privilege in using Defendant USA Pools corporate entity or entities in order to defeat justice, perpetuate fraud and to evade contractual or tort responsibility, warranting a *finding of fact and* conclusion of law that the corporate veil of the collective USA Pools Defendants is pierced and [Troy] be

---

[5] (Emphasis supplied).

[6] (Emphasis supplied).

4

personally *liable* to Plaintiffs for *negligence, intentional fraud*, *and* punitive damages for his specific intent to do harm.

2. The Court finds, *by a preponderance of the evidence*, that the *negligence* of Troy . . . , individually, and Defendants Troy Legg-Avery and USA Pools *proximimately caused* the injuries to Plaintiffs. . . .

3. (a) The Court finds, by a *preponderance of the evidence*, that Plaintiffs are entitled/to *judgment on their fraud claims* against [Troy] for his individual and independent specific intent to willfully misrepresent the material representations made to induce Plaintiffs and the HOA to act, and as a result [the victim] *was injured* as a *direct and proximate result of the misrepresentations*;

(b) The Court finds, *by a preponderance of the evidence*, that Plaintiffs are entitled to judgment on their fraud claims against [Troy] . . . as [he] had specific intent and willfully misrepresented the material representations [he] made to induce Plaintiffs and the HOA to act, and as a result, [the victim] was injured as a direct and proximate result of the misrepresentations[;] [and] . . .

4. The Court finds that the Schneiders presented *clear and convincing evidence* that [Troy] and the USA Pools Defendants, individually and collectively, *acted and failed to act with the specific intent to cause harm*.[7]

---

[7] (Emphasis supplied).

In between each of these paragraphs (determining liability based on the *evidence* presented), the trial court calculated the resulting damages. Suffice it to say, in light of clearly established precedent, the court arguably erred in this respect;[8] and as a result, it's also impossible for us to review this case on the merits.

Nevertheless, the majority contends that the trial court's order is merely "inartfully drafted," and even concedes that "it appears to conflate issues of liability and damages." Even so, the majority brushes these problems aside, asserting that

[8] *See Cohran v. Carlin*, 254 Ga. 580, 585 (331 SE2d 523) (1985) ("The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery. All of the defenses in question—public policy, clean hands, etc.—are attempts to contest the merits of the case. [The defendant] was therefore estopped from presenting them at trial, and the superior court properly *limited the trial to the issue of damages*." (emphasis supplied)); *Zhong v. PNC Bank, N.A.*, 345 Ga. App. 135, 136 (812 SE2d 514) (2018) ("[The defendant] is not entitled to summary judgment because the well-[pleaded] allegations of [the] complaint—as to which [the defendant] defaulted—have established its liability and there exist genuine issues of material fact on the amount of damages, *which is the only question remaining for resolution*." (emphasis supplied)); *Willis v. Allstate Ins. Co.*, 321 Ga. App. 496, 502 (2) (740 SE2d 413) (2013) ("Evidence which serves to relieve [the defendant] of liability, . . . which it has already admitted by virtue of the default judgment[,] is inadmissible." (citations omitted) (emphasis supplied)); *Hooker*, 316 Ga. App. at 345-46 (1) (holding that the trial court erred in considering evidence of the defendants' liability following a default judgment because their liability was no longer at issue following a default judgment); *Flanders v. Hill Aircraft & Leasing Corp.*, 137 Ga. App. 286, 289 (223 SE2d 482) (1976) (holding it was error for trial court to allow defendant to dispute that which it had admitted through default, or, given the defendant's default, to require plaintiff to prove by a preponderance of the evidence elements of its claims against the defendant, other than damages).

when the trial court references the "preponderance of the evidence" establishing the plaintiffs were "entitled to recover damages and that the corporate veil had been pierced, this language simply indicates that the well-pled allegations of the complaint were sufficient to support liability . . . ." But the trial court's final judgment—unlike its accompanying order—does not reference the allegations of the complaint *even once*,[9] and, more importantly, "evidence" is not presented in a complaint. So, while words certainly have a reasonable range of meaning, the majority's reading of the trial court's order and judgment is untenable.[10]

_____

[9] The trial court's corresponding order does reference the complaint several times as a basis for liability, but it also heavily references the evidence presented by the plaintiffs during the hearing.

[10] The majority attempts to suggest that much (if not all) of the "inartful" language contained in the trial court's order and judgment concerning evidence to establish liability can be chalked up to its consideration of punitive damages, but nothing in either document suggests that is indeed the case. In any event, the confusion surrounding the basis of liability—*i.e.*, the well-pleaded allegations of the complaint or the evidence presented at the hearing—and how that relates to the issue of punitive damages is all the more reason to remand this case to the trial court for clarification. *Cf. COMCAST Corp. v. Warren*, 286 Ga. App. 835, 842 (2) (650 SE2d 307) (2007) (holding that the well-pleaded allegations of the complaint, combined with the defendant's default, were sufficient to support the award of punitive damages); *Wise Moving & Storage, Inc. v. Riser-Roth*, 259 Ga. App. 832, 834 (1) (578 SE2d 535) (2003) (noting that the well-pleaded allegations of a complaint can, in some cases, authorize the underlying liability for an award of punitive damages without additional evidence being presented); *Wilson Welding Serv. v. Partee*, 234 Ga. App. 619, 620 (507 SE2d 168) (1998), *overruled on other grounds by Shields v.*

7

The majority also suggests that it's irrelevant the trial court considered liability evidence in addition to the complaint's allegations because "liable is liable." And while this may be true in a general sense, our precedent makes plain that how liability is established matters.[11] Tellingly, the majority cites no legal authority suggesting that the trial court's failure to limit a post-default judgment hearing to the issue of damages is somehow harmless. To the contrary, the cases set forth *supra* establish that liability is *concluded* after default judgment, and consideration of any *evidence* of liability or lack thereof is flatly prohibited.[12] Under the majority's view, then, a plaintiff could presumably proceed under some sort of hybrid approach to establishing liability by combining the well-pleaded allegations of a complaint *with* additional evidence to establish liability. This is not permitted under Georgia law.[13]

---

*Gish*, 280 Ga. 556 (629 SE2d 244) (2006) ("[T]he determination of liability for punitive damages and the amount of punitive damages are two separate issues. Only liability for punitive damages results from the default." (footnote omitted)); *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993) (holding that the well-pleaded allegations of the complaint, coupled with the default judgment as to the defendant's liability, were sufficient to satisfy OCGA § 51-12-5.1 (d)'s requirement that there be a finding of fact at trial as to whether punitive damages shall be awarded).

[11] *See supra* notes 2-4 & 8.

[12] *See supra* notes 2, 4, & 8.

[13] *See supra* notes 2, 4, & 8.

8

The majority also takes issue with our reliance on *Hooker v. Roberson*,[14] which held that the trial court erred when, after entering a default judgment, it considered whether the party who filed the complaint also proved liability by presenting evidence at a bench trial.[15] Specifically, the majority claims that *Hooker* is distinguishable because the trial court erred by *requiring* the plaintiff to present liability evidence, but did not address whether a plaintiff could voluntarily do so. But again, numerous cases hold that liability is *concluded* when a default judgment is entered, and the majority cites no legal authority suggesting that plaintiffs can have the benefit of a default judgment and also *choose* to present (and possibly expand) their case for establishing liability at trial.

Additionally, the majority notes that Troy did not object—either below or on appeal—to the trial court's consideration of evidence presented at the hearing. To be sure, we generally do not address errors not raised and briefed on appeal;[16] but there is no legal authority suggesting that we lack the discretion to remand a case for

---

[14] 316 Ga. App. 345, 345-46 (1) (729 SE2d 484) (2012).

[15] *See id*. at 345 (1).

[16] *See, e.g.*, *Time Warner Entm't Co. v. Six Flags Over Ga., LLC,* 254 Ga. App. 598, 605 (3) (a) (563 SE2d 178) (2002) (deeming an error abandoned when the appellants failed to cite to any relevant facts, give record citations, or present any legal analysis supporting their assertion).

clarification when we deem it prudent to do so. And here, given the unique circumstances of this case, I believe a remand is appropriate to enable this Court to (eventually) adequately review the trial court's judgment, which is fundamentally flawed, and to provide fairness to the parties, whose briefs make it clear they are likewise confused by the trial court's order and judgment. Indeed, in his brief, Troy relies exclusively on the evidence presented at the hearing because, in his view, the Schneiders effectively amended their complaint when they chose to present "actual evidence." This position is not entirely unreasonable in light of extensive Georgia precedent prohibiting the consideration of liability evidence following a default judgment.[17] On the other hand, while the Schneiders maintain that Troy admitted the well-pleaded allegations in the complaint, they also argue that, *regardless of the default*, we should apply the "any evidence" standard when reviewing the trial court's judgment, at least as to liability issues.[18]

---

[17] *See supra* notes 2, 4, & 8.

[18] The Schneiders—in the "table of contents" of their brief—list the "any evidence" standard five times and only mention damages or punitive damages twice. Indeed, the Schneiders contend that the any evidence standard applies to our consideration of whether (1) "[t]he default judgment against [Troy] *and* evidence presented in the trial court support a finding that [Troy] is *liable* for Clark's negligence pursuant to [OCGA] § 9-11-55 (a)"; (2) "[t]he default judgment against [Troy] *and evidence* presented in the trial court support [a]ppellees' fraud claim

10

The majority maintains that, absent an objection, it is still possible for us to review the merits of this appeal. But it is unclear from the majority opinion whether it is claiming that the evidence presented *was*, in fact, limited to the issue of damages, and therefore, not objectionable, or whether, due to Troy's failure to object to the liability evidence, he is both subject to admitting the complaint's well-pleaded allegations and having this Court view the evidence in a light most favorable to the trial court's findings. If it's the latter, I am unsure how to view the evidence to the extent that the well-pleaded allegations in the complaint arguably conflict with the trial court's factual findings on liability. To be clear, I am not proposing that we address a substantive issue not addressed by the trial court or the parties, but merely that we exercise our discretion to request clarification from the trial court to aid us in eventually resolving this appeal.

---

*and* damages pursuant to OCGA § 9-11-55 (a)"; and (3) "[t]he default judgment against [Troy] *and* evidence presented in the trial court support *piercing the corporate veil* against [Troy]." (Emphasis supplied) Moreover, the Schneiders note that, "[e]ven if [Troy] had not defaulted, sufficient evidence was nevertheless presented to support *a finding of negligence* by [Troy]. The standard of review to be applied to this enumeration of error is the 'any evidence' standard." (Emphasis supplied). Thus, given that the trial court is prohibited from considering liability evidence following a default judgment, its order apparently confused both Troy and the Schneiders as to whether the significant amount of evidence presented at the damages hearing was, in fact, limited solely to the issue of damages. As explained *supra*, the trial court's order plainly shows that it was not.

11

I also have serious concerns about potential violations of Troy's due-process rights. The default judgment prevented Troy from presenting evidence in his defense,[19] but for some reason, the Schneiders were allowed to present evidence to prove his liability. In fact, Troy even left the hearing at some point, which isn't surprising if he didn't plan on presenting evidence related to damages. Indeed, Troy would have no reason to expect the trial court to erroneously consider and rely upon evidence to establish liability, rather than limiting its consideration of evidence to the issue of damages. And nothing in the record suggests the trial court notified Troy ahead of time that it would consider liability evidence (notwithstanding the default), thus providing him with an opportunity to present evidence to defend himself.[20] It is, then, perfectly reasonable for Troy to maintain that the trial court's decision to

---

[19] *See supra* note 8.

[20] *See Cobb Cty. Sch. Dist. v. Barker*, 271 Ga. 35, 37 (518 SE2d 126) (1999) ("The constitutionally-guaranteed right to due process of law is, at its core, the right of notice and the opportunity to be heard."); *Coweta County v. Simmons*, 269 Ga. 694, 507 SE2d 440 (1998) ( "There having been no notice to [the defendant] that the [court] might consider the merits of the issue of his alleged negligence, a holding that he was liable, tantamount to an award of summary judgment against him, would deny him due process.").

determine liability based—at least in part—on the evidence presented at the hearing rendered the default judgment inoperative.[21]

In sum, under the particular circumstances of this case and its current procedural posture, I would exercise this Court's discretion to remand the case for the trial court to choose between maintaining the default judgment it entered, or alternatively, rescinding that default and requiring the Schneiders to prove their case by a preponderance of the evidence. Without such a clarification, it's inappropriate—if not impossible—to reach the merits of this appeal.

---

[21] The majority appears unconcerned with Troy's due process rights because there is no evidence that the trial court precluded him from disputing liability at the hearing. But if the trial court had permitted Troy to dispute liability, it arguably would have been reversible error under clearly established Georgia precedent *See supra* note 8.

13